IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,982

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM ANDREW SHANK,
*Appellant.*

SYLLABUS BY THE COURT

1.

Generally, it is within the trial court's sound discretion to determine whether a sentence should run consecutive to, or concurrent with, another sentence.

2.

Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.

3.

K.S.A. 2015 Supp. 21-6604(b)(1) requires the sentencing court to order the defendant to pay restitution unless the court finds compelling circumstances which would render a plan of restitution unworkable.

1

4.

An appellate court's review of a restitution plan can involve three standards of review: Questions concerning the amount of restitution and the manner in which it is made to the aggrieved party are reviewed under an abuse of discretion standard. A district court's factual findings relating to the causal link between the crime committed and the victim's loss will be affirmed if those findings are supported by substantial competent evidence. Finally, appellate courts have unlimited review over legal questions involving the interpretation of the underlying statutes.

5.

When challenging the workability of a restitution order, the defendant carries the burden to come forward with evidence of "compelling circumstances" that render the restitution plan unworkable.

Appeal from Thomas County District Court; GLENN D. SCHIFFNER, judge. Opinion filed April 15, 2016. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

NUSS, C.J.: After accepting William Shank's guilty pleas, the district court ultimately sentenced him to life with a mandatory minimum of 25 years for first-degree murder, 59 months for aggravated arson, and 32 months for aggravated burglary. It ordered all sentences to run consecutively and imposed $108,427.65 in restitution.

2

Shank argues the district court abused its discretion in ordering his sentences to run consecutively instead of concurrently and in imposing a restitution plan that is "unworkable." Because there was no abuse of discretion, we affirm.

FACTS AND PROCEDURAL HISTORY

The State charged William Shank with first-degree murder for the premeditated killing of Teri Morris; aggravated arson for setting afire the residence where she was killed; and aggravated burglary for entering the residence with the intent to kill her. Shank pled guilty to all counts.

At Shank's plea hearing, the State proffered the evidence it would have presented at trial. In 2012, Shank and Morris lived together in Garden City. Morris later moved to Colby where she eventually gave birth to their daughter, A.J.S. Later that year, Morris and A.J.S. moved into Russell Rodenbeck's house in Colby.

Early one morning in February 2013, Morris was sleeping in her bed while A.J.S. slept in her crib. While responding to a report of a fire at the house later that morning, firefighters found Morris' dead body in the living room. An autopsy revealed she was stabbed and slashed 27 times—and suffered blunt force trauma to her head and thermal burns to her naked body. The soot in her mouth and nose indicated she was alive when the fire was set.

Several hours later Shank was found with A.J.S. about 100 miles from Colby. He had cuts on his body, Morris' blood and DNA on his shirt, and Morris' blood on his right ear. Police found gloves covered with Morris' and Shank's blood in a trash bag at Shank's home as well as Morris' blood on the steering wheel of Shank's vehicle and on a lighter

3

inside. Shank's partial DNA was also found on the door knob of Rodenbeck's house. His computer revealed internet searches explaining how to pick a lock and break into a residence.

At the sentencing hearing, the State requested Shank serve sentences for each count consecutively while Shank requested them to run concurrently. Defense counsel did not object to the proposed plan for restitution of damages. When asked for Shank's position on the State's request for reimbursing the state general fund for expenditures made by the Board of Indigent Defense Services (BIDS), counsel responded Shank had no resources or ability to reimburse.

The court sentenced Shank to consecutive terms of life with a mandatory minimum of 25 years for first-degree murder, 59 months for aggravated arson, and 32 months for aggravated burglary. The court also assessed $108,427.65 in restitution, primarily as compensation for Rodenbeck's fire-damaged house.

Jurisdiction is proper under K.S.A. 2015 Supp. 22-3601(b)(3), (4) (maximum sentence of life imprisonment imposed for an off-grid crime).

More facts will be added as necessary to the analysis.

ANALYSIS

Issue 1: *The district court did not abuse its discretion by ordering Shank to serve consecutive sentences.*

Shank argues the district court erred in imposing consecutive sentences. The State responds that this decision was well within the court's discretion.

4

*Standard of review*

K.S.A. 2015 Supp. 21-6819(b) provides that, absent certain circumstances, "[t]he sentencing judge shall otherwise have discretion to impose concurrent or consecutive sentences in multiple conviction cases." This statute does not list specific factors for consideration but states the judge "may consider the need to impose an overall sentence that is proportionate to the harm and culpability" associated with the crimes. K.S.A. 2015 Supp. 21-6819(b); *State v. Wilson*, 301 Kan. 403, 405, 343 P.3d 102 (2015).

This court's abuse of discretion standard is well-established:

"'Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. [Citation omitted.]' *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* __ U.S. __, 132 S. Ct. 1594 (2012)." *State v. Wilson*, 301 Kan. at 405.

By simply claiming the district court "needlessly" lengthened Shank's sentence and imposed an "unduly" lengthy sentence, Shank essentially argues no reasonable person would have taken the court's view. The State counters that reasonable persons would agree with the court, *e.g.*, that the crimes were "excessively brutal" and consecutive sentences appropriate.

*Discussion*

At the sentencing hearing, the State requested Shank serve time for each crime consecutively "due to the egregiousness of each act." In support, it pointed to the

5

vulnerability of the victim at the time of the aggravated burglary—*i.e.*, Morris was sleeping naked alone in her house with her child. The State also noted the brutal, cruel, and premeditated nature of the murder and further emphasized that Shank set the fire to hide the crime while Morris was still alive. Shank requested concurrent sentences because he was only 25 years old and had entered into the plea to take responsibility for the crime. He did not make any personal statements at the hearing.

In the court's evaluation, it stated that it weighed the statements of counsel, the statements of the victim's family and those made on behalf of Shank, and the presentence investigation report. It also considered the case record which revealed Shank broke into the residence where Morris and her daughter were sleeping. He stabbed Morris 27 times and inflicted blunt force trauma to her body. One of those stab wounds punctured her lung and caused her to suffocate on her own blood. After setting the house on fire while Morris was still alive, Shank left with A.J.S. From this information, the court characterized the crime as excessively brutal.

In applying our test, we are unable to conclude that no reasonable person would take this view. See *Wilson*, 301 Kan. at 406 (citing *Ward*, 292 Kan. at 550). So the court did not abuse its discretion when it concluded consecutive sentences were proportionate to the harm and culpability associated with Shank's convictions. See K.S.A. 2015 Supp. 21-6819(b).

Issue 2: *The district court did not abuse its discretion by ordering Shank to pay restitution.*

Shank argues the district court erred in imposing restitution. The State counters Shank did not preserve the issue for appeal because he failed to object to the amount of

restitution at the sentencing hearing. In the alternative, it contends the court did not abuse its discretion by ordering restitution.

*Standard of review*

K.S.A. 2015 Supp. 21-6604(b)(1) provides that the sentencing court "shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." An appellate court's consideration of a restitution plan can involve three standards of review:

> "Questions concerning the 'amount of restitution and the manner in which it is made to the aggrieved party' are reviewed under an abuse of discretion standard. [Citation omitted.] A district court's factual findings relating to the causal link between the crime committed and the victim's loss will be affirmed if those findings are supported by substantial competent evidence. Finally, appellate courts have unlimited review over legal questions involving the interpretation of the underlying statutes." *State v. King*, 288 Kan. 333, 354-55, 204 P.3d 585 (2009) (citing *State v. Dexter*, 276 Kan. 909, 912-13, 80 P.3d 1125 [2003]).

Shank argues the restitution order is unworkable because he cannot pay the restitution as ordered. Accordingly, abuse of discretion is the proper standard. See *State v. Goeller*, 276 Kan. 578, 581, 77 P.3d 1272 (2003) (setting of amount of restitution is within district judge's discretion), *overruled on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015).

*Discussion*

Under K.S.A. 2015 Supp. 21-6604(b)(1), restitution is the rule and a finding that restitution is unworkable is the exception. *State v. Alcala*, 301 Kan. 832, 840, 348 P.3d 570 (2015). When challenging the workability of a restitution order, the defendant carries

the burden to come forward with evidence of "compelling circumstances" that render the restitution plan unworkable. 301 Kan. at 840.

In *King*, 288 Kan. at 356, the defendant did not raise at the district court level the issue of unworkability of the restitution plan "at all." We held:

"Not only would this *lack of objection* fail to preserve the issue for appellate review in the normal case, but it also fails to meet his burden of proving unworkability. Thus, the district court did not abuse its discretion when it ordered the restitution in this case." (Emphasis added.) 288 Kan. at 356.

In the instant case, Shank's attorney explicitly stated at the sentencing hearing he and his client did not object to the restitution "as listed":

"So Your Honor, we are here today. We have had an opportunity to review the restitution. The majority of the restitution, obviously, as the court knows is for—to reimburse the insurance company for the payment to the house. *We have no specific way to challenge that*. We've been given an opportunity to review the restitution claims made by the different individuals, *and we do not object to those*, Your Honor.

"So with that, we would ask the Court to make a determination to sentence Bill Shank concurrently with respect to all three of the crimes.

"We agree with the 604 days, as far as the time served, *and again,* [*we*] *do not have any objection to the restitution as listed,* Your Honor." (Emphasis added.)

As with the defendant in *King*, Shank's overall failure to object to the proposed restitution obviously includes a failure to raise any specific argument about the restitution plan's unworkability. 288 Kan. at 356. And as in *King*, this would represent not only a

failure to preserve the issue for our review in the normal case but also constitute a failure to meet his burden of proving unworkability.

Shank contends, however, that defense counsel's statement about a current lack of assets was the equivalent of objecting to the imposition of the restitution plan as unworkable. But as revealed by the following colloquy between defense counsel and the court, this statement related exclusively to the issue of BIDS reimbursement, which occurred immediately after counsel declared, "[A]nd again, [we] do not have any objection to the restitution as listed, Your Honor."

> "The court:  Mr. Fairbanks, if I might ask you [for] your position, or Mr. Shank's position, in regard to the *imposition of an order requiring him to reimburse the state general fund for all expenditures made by the Board of Indigent Defense Services* to provide your services in the matter.

> "Defense counsel:  Well, Your Honor, Mr. Shank has no resources. There were no resources available initially, Your Honor. I don't think he has any ability at this time to *reimburse them* for those services. I think that's the, my understanding, the major factor of that to look at, Your Honor.

> "*If and when he was ever granted parole, he has restitution to make*, he has no assets, Your Honor. None. The only asset he had was his car, and obviously that has been currently still, I think, in control of the State. So that would be the position we'd take, Your Honor." (Emphasis added.)

Like the *King* court, we conclude that here "the district court did not abuse its discretion when it ordered the restitution." 288 Kan. at 356. Simply put, the responsibility for challenging the workability of a restitution plan lies with the defendant, not the court. 288 Kan. at 356-57 (rejecting argument the district court has independent obligation to make findings on record regarding plan's workability, and contrasting language in

9

restitution statute with language in BIDS reimbursement statute, K.S.A. 22-4513, at issue in *State v. Robinson*, 281 Kan. 538, 132 P.3d 934 [2006]). And the defendant—not the court—carries the burden to come forward with evidence of compelling circumstances that render the restitution plan unworkable. *Alcala*, 301 Kan. at 840. Despite these burdens, Shank did not challenge the restitution plan, much less provide any compelling circumstances to support such a challenge.

Even giving Shank the benefit of any possible doubt about his counsel's statements at sentencing, *i.e.*, that in addition to having no current assets, he will not have the ability to pay restitution in the future, these statements do not support an abuse of judicial discretion. Our decision in *Alcala*, 301 Kan. 832, is instructive.

In *Alcala*, the defendant argued his restitution plan was unworkable in part because of his limited earning potential during his lengthy incarceration: life imprisonment without parole for 25 years. We noted, however, that restitution is typically not due during incarceration so "imprisonment alone is not sufficient to render restitution unworkable." 301 Kan. at 840. We concluded that, because Alcala had failed to present evidence of his inability to pay restitution after his possible parole, he had failed to meet his burden to show the restitution plan was unworkable. 301 Kan. at 840 (citing *State v. Alderson*, 299 Kan. 148, 151, 322 P.3d 364 [2014]).

As in *Alcala*, Shank failed to present evidence of his inability to pay restitution in the future. Accordingly, he could not establish this as a basis to demonstrate the restitution plan is unworkable. So the district court did not abuse its discretion in ordering restitution. See *Alcala*, 301 Kan. at 840.

For these reasons, the decision of the district court is affirmed.

10