NOT DESIGNATED FOR PUBLICATION

No. 116,296

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TIMOTHY J. BOWEN,
*Appellant.*

MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed October 13, 2017. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Joshua A. Ney*, county attorney, and *Derek Schmidt,* attorney general, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM: Timothy J. Bowen was convicted of criminal damage to property after he and his brother cut a 150- to 200-foot section of Jeffrey Reichart's barbed-wire fence. On appeal, Bowen raises three issues, but we find no reversible error:

- Bowen argues that the district court shouldn't have allowed evidence of some prior disputes he'd had with Reichart about the boundary line. But the objection Bowen raises on appeal to this evidence wasn't made at trial. That's a necessary step toward preserving an issue for appeal because it gives the trial judge a chance to avoid the claimed error.

- Bowen claims the evidence wasn't sufficient to convict him. But circumstantial evidence is enough to prove criminal damage to property, and there's circumstantial evidence here from which one could conclude that Bowen damaged Reichart's barbed-wire fence without Reichart's consent.

- Bowen claims the district court shouldn't have awarded restitution in the amount of the repair costs to the fence; instead, he suggests the court could only award the fair-market value of the 32-year-old fence. While Kansas courts do generally use fair-market value to determine restitution, repair costs may be awarded in an appropriate case and no evidence of the fair-market value of the damaged fence was presented to the district court.

Because we find no error in the points Bowen has raised, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Timothy Bowen lives with his mother, Virginia Bowen, who owns 29.32 acres in Jefferson County. Adjacent to her property is Reichart's 78.36-acre tract. Between a one-acre cemetery and Cove Road, Virginia Bowen also owns a triangular quarter acre that sits between the one-acre cemetery and the road that goes to both her property and Reichart's.

At the southernmost point of Virginia's quarter acre, Reichart constructed a barbed-wire fence. Reichart testified that this fence lies on his property.

Around December 13, 2014, Reichart noticed damage to his property. According to his testimony, the barbed wire between about 13 fence posts was cut and the wires were strung across his property:

"There was a lot of damage. Tire tracks and wire w[ere] all strung through the hayfield and posts were cut off, and [for] each section of the post, the wires were piled out in the hayfield. There[] [were] dead geese, apples, pears, and tires throw[n] [into] the hayfield. It had also been sprayed with Roundup."

The destroyed portion of the fence ran 190 feet south of the cemetery to the gate. Reichart said he had to repair that full 190-foot section of fence.

After seeing the damage, Reichart called law enforcement. Deputy Timothy Bacon of the Jefferson County's Sheriff's Office arrived at the scene and took pictures of the damage and a land survey of Reichart's property. In his testimony, Bacon described the damage: "I observed there w[ere] 13 fence posts on that road [. . .] that go[es] along the roadway and the barbed wire fence, the wire fence between [. . .] each post was removed and thrown out into the field 15, 20 feet."

Reichart testified that the brothers Timothy and Steven Bowen damaged his barbed-wire fence. He claimed there were about eight prior incidents with the Bowen brothers involving his property, starting in 2013. These incidents included Bowen driving his pickup through Reichart's property and threatening to kill him; Bowen driving and walking on Reichart's property multiple times; and Bowen laughing at Reichart after the fence was destroyed. Bowen's counsel objected to these incidents, claiming that it wasn't relevant and that it was speculative, but the court overruled the objection.

After Bacon spoke with Reichart and saw the damage, he went to speak with the Bowen brothers at Virginia's residence. They weren't home, so he left a note asking them to contact the Sheriff's Office. Steven contacted Bacon later that day, and Bacon returned to Virginia's house. While there, Steven told Bacon that he and his brother had cut the fence. But Steven insisted the fence was on his mother's property. He gave Bacon a map from the Jefferson County appraiser's office depicting both Virginia and Reichart's

property lines. From this map and after going to the disputed site, Bacon concluded that the disputed area appeared to be on Reichart's property.

Bowen did not testify at trial. But according to Reichart's testimony, Bowen, like his brother, claimed that the damaged fence was on his mother's property.

The case was tried twice to a judge in the district court. After a magistrate judge convicted Bowen, Bowen exercised his right to have a new trial before a district judge. After hearing testimony from Reichart and Bacon, the district judge also found Bowen guilty of misdemeanor criminal damage to property. The court sentenced him to probation for 12 months with an underlying 6-month jail sentence to be served if Bowen didn't successfully complete his probation. The court also ordered him to pay $1,654.15 in restitution to the victim, Jeffrey Reichart.

Bowen then appealed to our court.

ANALYSIS

I. *Bowen Did Not Object at Trial on the Basis He Asserts on Appeal Regarding Alleged "Other Crimes and Civil Wrongs" Evidence under K.S.A. 60-455.*

Bowen's first argument on appeal is that the district court improperly admitted evidence about his prior bad acts towards Reichart under K.S.A. 2016 Supp. 60-455(e). To consider this argument, we must first put the provision at issue, K.S.A. 2016 Supp. 60-455(e), into the context of other rules of evidence.

As a general proposition, evidence is admissible if it is relevant to prove a material fact. *State v. Reid*, 286 Kan. 494, 502-03, 186 P.3d 713 (2008). And evidence is relevant when the facts establish a rational connection to the intended result or inference. 286

4

Kan. at 502. But courts will sometimes exclude relevant evidence based on other rules. One of these rules appears in K.S.A. 2016 Supp. 60-455(a), which says generally that evidence of a person's prior crimes or civil wrongs cannot be admitted to prove that the person has the tendency to commit certain crimes. But this rule also includes exceptions—evidence of prior crimes or civil wrongs is admissible if it proves a material fact other than the propensity to commit crimes (for example, motive or intent). K.S.A. 2016 Supp. 60-455(b).

Bowen claims that evidence regarding his longstanding, negative relationship with Reichart is evidence either of prior criminal acts or civil wrongs; accordingly, he says it should have been excluded. But he didn't object on this basis at trial. During the trial, he objected to this admission only with a general objection that it wasn't relevant and that it was speculative, not that its admission violated K.S.A. 2016 Supp. 60-455(e).

Under K.S.A. 60-404—the contemporaneous-objection rule—a defendant has to object to the admission of the evidence at trial to preserve the issue on appeal. The legal objection not only must be clear but also must be the same one argued on appeal. *State v. Raskie,* 293 Kan. 906, 914, 269 P.3d 1268 (2012); *State v. King,* 288 Kan. 333, 341-42, 204 P.3d 585 (2009). In 2009, the Kansas Supreme Court began interpreting K.S.A. 60-404 more literally, moving away from a more relaxed objection requirement. *King,* 288 Kan. at 349. Under the *King* standard, the contemporaneous-objection rule is satisfied only by an objection at the time evidence is offered. 288 Kan. at 349. See *State v. Houston,* 289 Kan. 252, Syl.¶ 10, 213 P.3d 728 (2009); *State v. Jones,* 267 Kan. 627, 637, 984 P.2d 132 (1999); *State v. Scott*, No. 110,864, 2015 WL 2131576, at *2 (Kan. App. 2015) (unpublished opinion).

Because Bowen didn't make an objection under K.S.A. 60-455, we need not consider his argument. See *State v. Yaeger*, No. 112,692, 2015 WL 6835257, at *1-2 (Kan. App. 2015) (unpublished opinion).

Even if we were to consider the argument on its merits, the district court overruled Bowen's objection at trail on the ground that the testimony "could be relevant as to motive." Motive is one of the reasons evidence of prior criminal acts or civil wrongs may be admitted under K.S.A. 2016 Supp. 60-455(b). Bowen has not shown that the district court erred in finding the evidence relevant regarding Bowen's motive for taking down the fence.

Bowen also suggested that the district court had erred on this evidentiary issue because at some point in the trial it may have referred to a theory no longer used as an independent basis for the admission of evidence. That theory, called "res gestae," traditionally allowed evidence of prior bad acts to be admitted as long as the prior acts were closely connected to the key event. See *State v. Sanders*, 258 Kan. 409, 422-23, 904 P.2d 951 (1995). In 2006, the Kansas Supreme Court stopped using res gestae as an independent basis for admitting evidence. *State v. Gunby*, 282 Kan. 39, 63, 144 P.3d 647 (2006). Instead, such evidence now must be analyzed under K.S.A. 60-455. 282 Kan. at 59-60. But even if the district court referred to the evidence at one point as admissible based on res gestae, it said the evidence was admissible as to motive at another point. And evidence of prior criminal offenses or civil wrongs is admissible if it proves a material fact other than the propensity to commit crimes; motive is a material fact. K.S.A. 2016 Supp. 60-455(b).

We find no error in the district court's decision to admit this evidence.

II.  *Sufficient Evidence Supported Bowen's Conviction for Criminal Damage to Property.*

Bowen next argues that the State provided insufficient evidence to convict him of criminal damage to property.

When appellate courts review the sufficiency of evidence in a criminal case, they do so in the light most favorable to the State. *State v. Fisher*, 304 Kan. 242, 260, 373 P.3d 781 (2016); *State v. Scaife*, 286 Kan. 614, 618, 186 P.3d 755 (2008). That's because the fact-finder (in this case, the trial judge) has already found in the State's favor by convicting the defendant. On appeal, we do not reweigh evidence or resolve evidentiary conflicts. *State v. Qualls*, 297 Kan. 61, 66, 298 P.3d 311 (2013). So we look to see whether, based on all the evidence, a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. If so, we affirm the conviction. *Fisher*, 304 Kan. at 260.

We judge the sufficiency of the evidence against what the State had to show to prove this crime. Criminal damage to property occurs when a defendant knowingly damages property in which someone else has an interest, without his or her consent. K.S.A. 2016 Supp. 21-5813(a). Knowingly means that the defendant is aware of his or her conduct and is reasonably certain that he or she will cause the result. K.S.A. 2016 Supp. 21-5202(i).

Circumstantial evidence is sufficient to support a conviction for even the most serious offenses. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). And even when circumstantial evidence leaves other reasonable conclusions or inferences than one leading to a conclusion of the defendant's guilt, a fact-finder may still infer that a material fact needed to prove guilt exists. *Scaife*, 286 Kan. at 618.

Here, the State offered circumstantial evidence that Bowen knowingly damaged Reichart's barbed-wire fence without his consent. It provided evidence of several property disputes between Reichart and Bowen dating back to 2013. This dispute involved the southernmost portion of the triangular quarter acre between the cemetery and the road leading to both the Reichart and Bowen properties; that's where Reichart's fence was damaged. On one past occasion, Bowen drove his pickup through Reichart's property and

7

threatened to kill him. On several occasions Bowen either drove or walked on Reichart's property. Sometime after Reichart's fence was destroyed, Reichart saw Bowen laughing at him. And Deputy Bacon testified that Bowen's brother, Steven, admitted that he and Bowen had cut the fence.

Viewed in the light most favorable to the State, this evidence was sufficient for a rational fact-finder to find Bowen guilty of criminal damage to property beyond a reasonable doubt. Although the State did not offer direct evidence that Bowen damaged Reichart's property—in other words, no one saw him do it—the State provided enough circumstantial evidence for a reasonable fact-finder to infer that due to Bowen's longstanding animosity towards Reichart over Virginia Bowen's property line, he knowingly damaged Reichart's barbed-wire fence. Sufficient evidence supports the conviction.

## III. Bowen Has Not Shown Error in the District Court's Calculation of the Amount of Restitution.

Bowen's final argument is that the district court erred as a matter of law by using the replacement cost rather than the fair-market value to determine the amount of restitution owed to Reichart.

We review the method and the amount of restitution under an abuse of discretion standard. The district court must support its factual findings—that the crime did in fact cause the victim's loss—with substantial evidence. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). What costs may be included in a restitution amount is a legal question. *State v. Hunziker*, 274 Kan. 655, 660, 56 P.3d 202 (2002). And appellate courts have unlimited review over legal questions. *Shank*, 304 Kan. at 93; *King*, 288 Kan. at 354-55.

8

A restitution award includes the damage or loss caused by the defendant's crime. K.S.A. 2016 Supp. 21-6604(b)(1). The award is appropriate when the district court finds a causal connection between the crime and resulting damage. *State v. Wells*, 18 Kan. App. 2d 735, 737, 861 P.2d 828 (1993). In property crime cases, Kansas courts have generally used fair-market value as the standard for determining restitution. *State v. Hall*, 297 Kan. 709, 713, 304 P.3d 677 (2013).

When the fair-market value isn't easily attainable, however, the district court may consider other factors, including the condition or replacement costs of the property. For example, if the damaged property may be restored to its undamaged condition, the restitution amount should be the reasonable cost of repairs plus compensation for the loss of its use. But this amount must not exceed the reasonable market value of the property immediately before the damage. *State v. Phillips*, 45 Kan. App. 2d 788, 795, 253 P.3d 372 (2011).

Here, the district court considered factors other than the fair-market value when it found that Reichart's losses totaled $1,654.15. To determine this restitution amount, the district court used the actual cost of replacing the damaged section of Reichart's fence. Reichart's financial losses included: restretching 190 feet of his fence, replacing all five of the wires between the posts, replacing the posts, labor costs to make the repairs, and the cost of fuel for his tractor. Reichart already had some of the materials that he used to repair the fence—such as the wire and the posts. But even though he used materials that he already had, Reichart still incurred a financial loss because he was prevented from using these materials over an extended time period simply to repair normal wear to his fence. The district court found Reichart's testimony credible.

Bowen argues that the district court should have used the fair-market value of 150 feet of a 32-year-old, barbed-wire fence (the length he claims was actually damaged) to determine Reichart's restitution award. As in *Phillips*, the court here considered evidence

9

based on repair costs, not the fair-market value. See 45 Kan. App. 2d at 793. But in that case, where we found an award of repair costs improper, evidence of the damaged property's fair-market value could be found (the defendant presented evidence regarding the damaged property's value according to National Automobile Dealers Association guidelines). 45 Kan. App. 2d at 789. So it was clear in *Phillips* that the victim's estimated repair costs exceeded the fair-market value of the property before the property was damaged. 45 Kan. App. 2d at 796. Here, there is no evidence of a value or market for a 32-year-old fence. In the absence of such evidence, the court had to rely on other factors. Reichart has only asked for the reasonable repair costs. Based on his testimony, there was substantial evidence that Reichart incurred $1,654.15 in loss to repair his fence. There is no evidence that this amount exceeded the fair-market value of his fence immediately before the damage. We conclude that the district court did not abuse its discretion when it used Reichart's repair costs to determine his restitution award.

In the alternative to his claim that the court should have used the fair-market value for the damaged section of fence, he argues that the district court should have used the cost to repair the fence to its condition at the time of the damage—presumably by finding 32-year-old posts and wire to use. This argument is impractical and equally unsupported by any evidence presented to the court. To comply with this method, Reichart would've had to use 32-year-old wire and posts to put the fence back to its condition at the time of damage. We have no evidence that such materials could be obtained or, if so, what that would cost.

The district court did not err as a matter of law in the amount of restitution ordered.

The district court's judgment is affirmed.