NOT DESIGNATED FOR PUBLICATION

No. 119,322

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RACHEAL LEANNE MOODY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed September 27, 2019. Affirmed in part and vacated in part.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Amy E. Norton*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and WARNER, JJ.

PER CURIAM: A district court "may only order restitution for losses or damages caused by the crime or crimes for which the defendant was convicted unless, pursuant to a plea bargain, the defendant has agreed to pay for losses not caused directly or indirectly by the defendant's crime." *State v. Dexter*, 276 Kan. 909, 919, 80 P.3d 1125 (2003). To support an order of restitution, the State must provide substantial competent evidence that establishes a causal link between the crime committed and the victim's loss. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016).

1

Racheal Leanne Moody provided methadone to her boyfriend Christopher Allen. A friend found Allen dead the next morning. The State charged Moody with distribution of methadone causing death and obstruction of justice for lying to police. At the preliminary hearing, the State presented expert testimony of two physicians who opined that Allen's cause of death was from his ingestion of the methadone. Later, Moody pleaded guilty to distribution of methadone and felony obstruction. At her sentencing hearing, the district court determined Moody was the but-for cause of Allen's death and ordered her to pay Allen's mother restitution for his funeral costs and witness fees for one physician who testified at the preliminary hearing about the cause of Allen's death.

Because we find that Moody's crimes of conviction were not proven to be the proximate cause of Allen's death, we vacate the restitution order of funeral expenses. We also find that the witness costs for the physician who testified at the preliminary hearing were not reasonably related to Moody's crimes of conviction, so that portion of the court costs assessment is vacated. The balance of court costs assessed were valid.

FACTUAL AND PROCEDURAL HISTORY

Moody and her boyfriend, Allen, lived together in Salina, Kansas. Sometime between 3 p.m. and 4 p.m. Moody texted Allen to tell him she had gotten them some "syrup" and that she only wanted to do it with him. The "syrup" was a tablespoon of methadone. They subsequently met at home.

Moody tried the methadone, but she did not like it. She said it made her sleepy. Moody told Allen not to use the methadone and took a nap. Allen woke Moody later and told her he had tried the methadone. Later that night, around 11 p.m., Moody left Allen's apartment. Allen's phone records show his last outgoing call was to Moody at 2:38 a.m. the following morning. The records also show Moody and Allen spoke for a little over eight and a half minutes just before Allen's last outgoing call.

2

The next day, Allen did not show up for work and was not answering calls from his friend and coworker, Joshua Hill. Hill contacted Moody and the pair exchanged text messages expressing concern for Allen. Moody urged Hill to break into Allen's apartment, and Hill eventually went to Allen's apartment and kicked in the front door. Inside, Hill found Allen dead, sitting on a bean bag with his cell phone, still plugged into a charger, on his lap. Along with finding methadone in Allen's apartment, law enforcement found evidence of marijuana, a clear plastic baggie with white residue, and 42 loose pills that included hydrocodone and one other hydrocodone-type drug. Law enforcement also found a keychain that contained alprazolam, acetaminophen, carisoprodol, and baclofen.

Moody admitted to police that she brought the methadone to the apartment and that Allen had ingested some. The State charged Moody with distribution of a controlled substance leading to death. The district court conducted a preliminary hearing eight months after Allen's death. At the hearing, the State presented the testimony of a toxicologist, Dr. Christopher Long, and a forensic pathologist, Dr. Erik Mitchell.

Dr. Long testified that he tested blood, urine, and liver samples from Allen and determined that Allen had a low, but potentially lethal, amount of methadone in his system. The urine test showed a presence of metabolite, which meant Allen did not die right away because metabolization does not continue after death. Long could not determine exactly when Allen took his last dose of methadone, but he estimated it would have been within four to eight hours of his death if it was a one-time dose. That said, Long also testified that Allen could have taken methadone "over a period of time and metabolizing it and then he took one final dose and that pushed him over the edge." Long explained that there are many factors that can contribute to death by methadone.

Dr. Mitchell's autopsy report determined Allen's death was an accident with the "diagnosis . . . listed as complications of methadone intoxication." At the preliminary

3

hearing, Mitchell testified that Allen died "as a consequence of toxicity of Methadone" and explained there was "a lower concentration than is usual in [methadone related] deaths" and was "well below average for Methadone overdoses." Mitchell testified that there is much variability in determining the amount and cause of a methadone-related death but opined that Allen's death resulted from a single intake, rather than chronic methadone use. Mitchell believed it was likely Allen did not have long-term survival after the intake.

Moody entered a guilty plea to one count of distribution of methadone and a no contest plea to one count of felony obstruction for purposefully lying to police. The distribution of methadone leading to death count was dismissed. The parties agreed to recommend a prison sentence consisting of consecutive counts at the maximum presumptive sentence. The plea agreement had no provision about restitution.

Before sentencing, the State filed requests for costs and restitution. The State sought recovery of $1,182.72 as the expenses incurred to have Dr. Long travel from St. Louis, Missouri, to appear in court for the preliminary hearing. The State also filed a notice of restitution seeking $2,653.50 to Allen's mother for funeral expenses she paid to bury Allen.

Moody's counsel objected to the restitution award and the imposition of the witness fees. Moody argued that she never agreed that she caused Allen's death and argued that she had disputed this fact throughout the proceedings. Moody pointed out that she was not convicted of distribution of methadone leading to death and thus she should not have to pay restitution associated with causing Allen's death. The district court relied on the evidence presented at the preliminary hearing to find that causation had been established.

4

"Ma'am, you're still a person of your own free will to make decisions regardless of your background and circumstances, and the distribution of that methadone from this [c]ourt's perspective and the evidence I viewed is the 'but for' cause of his death. The fact that the deceased had substance abuse issues, from the experts' testimony, did not give rise to them finding anything other than causation for the methadone ingestion. . . . Both of [the] physicians opined that the methadone was the cause of death. . . .

. . . .

"As for the expenses, the [c]ourt views [Moody's] behavior of distributing methadone as the direct cause, based upon the testimony of Dr. Long and Dr. Mitchell, and it meets the requirements of restitution. Both of those physicians opined regarding causation, and within a reasonable degree of medical certainty testified that his ingestion of methadone caused his death. The [c]ourt is imposing restitution to [Allen's mother] in the amount of $2653.50 for funeral expenses of the decedent."

The district court sentenced Moody to 23 months in prison as recommended by the parties and ordered her to pay the travel expenses as court costs and funeral expenses as restitution. Moody objected again to the imposition of the witness fees and the court held that the costs were "reasonable" and incurred by the State as part of prosecuting the case. Moody timely filed this notice of appeal.

THE RESTITUTION AWARD

Moody argues that the restitution award was incorrect for two reasons. First, Moody argues she could not be the but-for cause of Allen's death. Second, the district court did not properly consider whether Moody was the legal cause of Allen's death as required by the proximate cause analysis. The State contends Moody contributed the methadone and was thus the but-for cause of his death and argues the district court properly considered the issue under a proximate cause analysis. We find Moody properly preserved this issue for appeal.

5

*There was not substantial competent evidence presented to establish that the distribution of methadone was the proximate cause of Allen's death.*

On appeal, Moody argues the district court erred in awarding restitution in two ways. First, Moody argues her crime of conviction was not the proximate cause of Allen's death. Second, Moody argues the district court did not properly analyze the second prong of the proximate cause analysis when the court failed to consider whether Allen's death was a foreseeable result of Moody's conduct. The State argues that the district court made findings about the second prong of the proximate cause test and that Moody's crime was the proximate cause of Allen's death.

A district court "may only order restitution for losses or damages caused by the crime or crimes for which the defendant was convicted unless, pursuant to a plea bargain, the defendant has agreed to pay for losses not caused directly or indirectly by the defendant's crime." *Dexter*, 276 Kan. at 919. To support an order of restitution, the State must provide substantial competent evidence that establishes a causal link between the crime committed and the victim's loss. *Shank*, 304 Kan. at 93; *State v. Alcala*, 301 Kan. 832, 837, 348 P.3d 570 (2015). Substantial competent evidence is legal and relevant evidence that a reasonable person could accept as sufficient to support a conclusion. *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 (2015).

The Kansas Supreme Court has determined that the requirement of a causal connection may be satisfied if the loss was either directly or indirectly caused by the crime. See *State v. Hall*, 298 Kan. 978, 990, 319 P.3d 506 (2014). Yet more recently in *State v. Arnett*, 307 Kan. 648, 655, 413 P.3d 787 (2018), the Kansas Supreme Court held that "the causal link between a defendant's crime and the restitution damages for which the defendant is held liable must satisfy the traditional elements of proximate cause: cause-in-fact and legal causation." The court reasoned that "'[a]lthough not all tangential costs incurred as a result of a crime should be the subject of restitution, . . . there is no

6

requirement that the damage or loss be "directly" caused by the defendant's crime.' . . . [Nevertheless,] there must be some limit to the defendant's liability." 307 Kan. at 653-54.

> *We assume, without deciding, that Moody's crime was the cause-in-fact of Allen's death.*

Causation-in-fact required under the holding in *Arnett* is based on a but-for analysis. 307 Kan. at 654. To establish causation-in-fact there must be "sufficient evidence from which a jury could conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 420, 228 P.3d 1048 (2010). Causation-in-fact as applied here is subject to K.S.A. 2018 Supp. 21-6607(c)(2), which limits reparation to "the damage or loss caused by the defendant's crime." The illegal conduct here is Moody's distribution of methadone. Thus, to be the basis of an order of restitution, Moody's distribution of methadone must have been the proximate cause of Allen's death.

The State makes a simple argument for this issue. According to the State, but-for Moody's distribution of the methadone to Allen, "he would not have had any to take, and thus, overdose on." Moody, however, argues that she only made the methadone available to Allen, and "[w]hat [Allen] did or did not do with it after that was up to him."

We find it telling that the court only convicted Moody of distributing methadone to Allen. If the State wanted to make a guilt determination related to Allen's death, it should have sought a conviction for Moody's original charge of distribution of methadone causing death. Then, the State would have had the statutory authority to seek a restitution award for the harm caused by Moody's crime. But by finding Moody to be the but-for cause of Allen's death, the district court determined Moody was responsible for his death through restitution and not conviction. On appeal, the State is asking this court to make the same determination, but we hesitate to do so. The Kansas Supreme Court has

7

cautioned against focusing on "an overly broad interpretation of 'nexus' and ignor[ing] the essential, statutorily mandated requirement that the loss be caused by, not merely connected to, the crime of conviction." *Dexter*, 276 Kan. at 918.

Instead, because the State fails to prove the second part of the causation equation, we will simply assume, without deciding, that the State has met the first prong—that substantial competent evidence in this case could support the finding that Moody was the cause-in-fact of Allen's death.

*Moody's conviction was not shown to be the legal cause of Allen's death.*

The proximate cause analysis requires Moody to be both the cause-in-fact and the legal causation of Allen's death. Legal causation is based on the concept of foreseeability. It has the effect of limiting causation-in-fact liability to when the resulting injury or damage is foreseeable. Thus, "the defendant is only liable when it was foreseeable that the defendant's conduct might have created a risk of harm and the result of that conduct and any contributing causes were foreseeable." *Arnett*, 307 Kan. at 655.

Moody argues that it is impossible to know, and thus foresee, what would cause someone's death from ingesting a "'well below average' methadone concentration." The State argues that it is a "highly foreseeable occurrence" that Allen would take the drugs Moody brought him and his taking of the drugs does not break the causality chain as an intervening cause. The State also suggests that since Moody knew that Allen was already using other narcotic drugs, it is not "outside the realm of foreseeability that giving someone already using narcotic drugs additional narcotic drugs could harm or kill them."

The State also argues that "[i]t simply belies belief to think that Moody could not have reasonably known that giving Allen—a man she claims used and stole large amounts of per prescription opioids—a new kind of drug would not carry serious risks."

8

Although Moody told police that she believed Allen stole some of her Norco tablets and abused Opana, Xanax, and Valium in the past, there is no evidence in the record to support the conclusion the State is proffering—that Moody would know giving Allen methadone could kill him.

It is an easy conclusion to find it foreseeable that Allen would take the methadone that Moody distributed to him. Moody knew he abused drugs in the past and according to their text message exchange, Allen was interested in the prospect of using the methadone when Moody told him about it. Thus, it is foreseeable that Allen would use the methadone.

That said, legal causation limits liability to when "it was foreseeable that the defendant's conduct might have created a risk of harm and the *result of that conduct and any contributing causes were foreseeable*." (Emphasis added.) *Arnett*, 307 Kan. at 655. The foreseeable result of Moody's conduct was Allen's use of the methadone. But the eventual result of Allen's death could not have been foreseeable by Moody. The rule requires that any contributing causes also be foreseeable, and this is where the analysis by the State appears to suggest that Moody should be aware of any contributing causes that could have led to Allen's death. But this is a slippery slope—is it foreseeable that Moody would be aware of all the drugs in Allen's system? This seems impossible because, as the State points out, Moody knew that Allen abused many other narcotics in the past. Thus, how could she ever possibly know what Allen had taken that could contribute to his eventual death?

Additionally, Moody took the methadone herself and she did not overdose. It does not seem logical that Moody, after taking the methadone, sleeping, and eventually driving home, would then foresee Allen dying of the exact drug she ingested herself. Moody's use of the methadone, combined with her knowledge of Allen's previous drug use, could lead to the opposite conclusion of what the State suggests. It is foreseeable that Moody

9

thought Allen could reasonably handle the ingestion of the methadone since she took it herself and believed Allen to be an avid drug user.

Although the testimony of the physicians concluded that Allen died of the methadone he ingested, the testimony also suggested that the physicians themselves cannot predict how any person will react to an opiate. Dr. Mitchell testified "there's a lot of different factors. There are individual factors. There are factors I'm sure we don't understand in opiates as yet. Or at least certainly I don't. There is a lot of variability. And you will get people who die at low dose and high levels [of ingestion]." So while the physician testified that he does not fully understand opiates and they are difficult to predict, the State suggests that Moody should have foreseen that Allen's ingestion of the methadone would cause his death.

Even if the State's argument that Allen's death was foreseeable was logical, the State did not present substantial competent evidence for this finding. The State offered no evidence, and a review of the record provides none, to support its conclusion that "[i]t simply belies belief to think that Moody could not have reasonably known that giving Allen . . . a new kind of drug would not carry serious risks." The record merely shows that Moody brought methadone to her boyfriend's apartment, both Moody and Allen ingested the methadone even though Moody told Allen not to take it, Moody left Allen's apartment that night, and a friend discovered Allen dead in his living room the next day.

We conclude that there was not substantial competent evidence presented to support the district court's conclusion that Moody's distribution of methadone was the proximate cause of Allen's death. Even if we assume Moody's distribution of methadone to Allen was the causation-in-fact of Allen's death—satisfying the first prong of the test—substantial competent evidence must support both prongs. There was not substantial competent evidence to support a finding of legal causation or foreseeability. As a result, we vacate the restitution award for funeral expenses in the sum of $2,653.50.

10

See *State v. Miller*, 51 Kan. App. 2d 869, 869, 355 P.3d 716 (2015) (finding that the correct remedy for lack of causal connection between crime of conviction and restitution is to vacate the district court's restitution order).

## ASSESSMENT OF COSTS

Moody argues that the district court erred when it ordered her to pay for the costs of Dr. Long's travel and testimony because it was unrelated to the crimes to which she pleaded guilty. The State argues that Moody did not preserve this issue for appeal but even if she did, Long's testimony sufficiently related to the crimes which Moody pled because it corroborated Moody's statements to police.

*Moody did not preserve this issue for appeal but an exception applies.*

The State contends that Moody should not be able to raise this argument on appeal because she presented a different argument at the sentencing hearing. At sentencing, Moody specifically objected by making an argument that the court should not penalize her for exercising her right to a probable cause finding through a preliminary hearing. At sentencing, Moody's counsel stated,

> "[T]hese are prosecution costs the State seeks to recover, the doctors' testimony. I am familiar with a case out of, I think it's Wisconsin . . . . It says that the testimony of a psychologist or a toxicologist is hearsay unless that person is present to testify. So, [Moody] exercised her right to a preliminary hearing, and I believe that the constitution requires a probable cause determination of some sort, and that's why we have preliminary hearings and grand jury indictments in felony cases without exception all through this land. And so to penalize her by conditioning her exercise of that right by payment of costs and expenses of prosecution would be to dissolve the right entirely. I would ask the [c]ourt again not to impose witness costs and fees in this regard."

11

After some explanation by the State detailing the breakdown of the costs, the district court asked Moody, "So [Moody] isn't disputing the reasonableness of the amount but just the imposition at all those fees for the reasons you previously stated?" Moody's counsel affirmed the district court's question, and the district court found the fees to be reasonable, stating,

> "I'm not hearing a dispute regarding the amount, just the imposition of it, and the [c]ourt finds that those costs are reasonable in this case, and that the doctor did testify, they were incurred, and the [c]ourt will grant the request pursuant to Kansas statute for recovery of costs by the State in the amount of $1,182.72."

On appeal, Moody now argues that the order for court costs was improper because the costs were unrelated to the crimes to which she pled. This is a different argument than what Moody raised at the sentencing hearing. In her brief on appeal, Moody recognizes her specific objection at the lower court but does not concede it was different. Rather, Moody argues that if this panel finds the argument to be different, then an exception applies.

There are several exceptions to the general rule that a party may not assert a new legal theory for the first time on appeal, including the following: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and finally determines the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

An appellant is required to explain why he or she did not raise an issue before the district court and why the appellate court should consider it for the first time on appeal. See Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34). In addition, the Supreme

12

Court has held that litigants who violate this rule risk a ruling that the issue is improperly briefed, and the issue will be considered waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). The Supreme Court has made clear that it will strictly enforce Rule 6.02(a)(5). *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Moody argues that the first exception applies because the newly asserted theory involves only a question of law arising on proved or admitted facts and determines the case. The State argues that this exception cannot apply because the district court did not have a chance to rule directly on this specific issue and therefore the court made no factual findings for this argument.

Despite the State's assertion that the district court made no factual findings for this specific argument, the exception applies if all the facts necessary to decide the issue have been proven or admitted. See *Phillips*, 299 Kan. at 493. Here, all the facts necessary have been proven or admitted and this newly asserted theory involves only a question of law and is determinate of the issue. The exception therefore applies, and we will consider this argument for the first time on appeal.

*The court costs were unrelated to Moody's crime.*

"To the extent that this issue requires statutory interpretation, [this court] exercise[s] unlimited review. [Citation omitted.] To the extent the district court has discretion in an award for costs and expenses, [this court] review[s] for an abuse of discretion." *State v. Lopez*, 36 Kan. App. 2d 723, 726-27, 143 P.3d 695 (2006). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Under K.S.A. 22-3801(a), "[i]f the defendant in a criminal case is convicted, the court costs shall be taxed against the defendant and shall be a judgment against the defendant which may be enforced as judgments for payment of money in civil cases." K.S.A. 2018 Supp. 28-172a(d) states that all other costs "shall be approved by the court" and defines possible additional fees as including, but limited to,

> "fees for Kansas bureau of investigation forensic or laboratory analyses, fees for detention facility processing pursuant to K.S.A. 12-16,119, and amendments thereto, fees for the sexual assault evidence collection kit, fees for conducting an examination of a sexual assault victim, fees for service of process outside the state, witness fees, fees for transcripts and depositions, costs from other courts, doctors' fees and examination and evaluation fees."

Along with the statutory authority, Kansas courts have also held that upon conviction in a criminal action the defendant is liable for the costs of both the prosecution and defense of the case. *State v. Shannon*, 194 Kan. 258, 263, 398 P.2d 344 (1965). These costs are not intended to penalize the defendant, but to allocate expenses incurred in prosecution. *State v. Dean*, 12 Kan. App. 2d 321, 323, 743 P.2d 98 (1987). And most notable here, Kansas courts have also held that "it is beyond the district court's discretion to award costs and expenses that were unrelated to prosecuting the crimes of conviction." *Lopez*, 36 Kan. App. 2d at 728.

This court has considered this issue in an unpublished case in which the court convicted the defendant as part of a plea agreement. See *State v. Richmond*, No. 98,790, 2008 WL 4849342, at *3 (Kan. App. 2008) (unpublished opinion). The State charged Richmond with rape, but the State subsequently dropped that charge and Richmond pled guilty to two counts of aggravated battery. The panel held that the costs the court ordered to cover a sexual assault kit and the sexual assault examination were unrelated to the two counts of aggravated battery to which the defendant pled. Neither the kit nor the examination formed a part of the factual basis for the defendant's plea and therefore the

14

district court abused its discretion when it ordered the defendant to pay for those expenses. 2008 WL 4849342, at *3. We find this rationale compelling.

Here, the district court used the preliminary hearing evidence along with an affidavit as the factual basis for the plea. The State indicated that the preliminary hearing would cover the factual basis for Count 1 and it submitted the affidavit for the factual basis for Count 2, interference with law enforcement.

The court costs at issue total the cost for Dr. Long to fly to the preliminary hearing, rent a car, and for "one day of essentially court testimony." Also included was the copying fee of the file to send to Moody's experts. A review of the record shows that Long's testimony was for the specific purpose of determining that the cause of Allen's death was his ingestion of methadone. Long did not testify to anything related to Moody's distribution and never discussed whether the methadone Moody distributed was the same methadone discovered in Allen's toxicology assessment. Moody never disputed that she brought the methadone into their home, nor does she deny that Allen ingested some of it—albeit against her instructions.

Despite this, the State argues on appeal that Dr. Long's testimony was essential to proving both crimes Moody pleaded guilty to. First, the State argues that because Moody claimed she told Allen not to take the methadone, Long's testimony "established that Allen had actually ingested methadone, which proved that he was not merely or inadvertently in possession of the methadone found in the cabinet." The State further argues that both Long's testimony and Moody's text messages "show not only her intent to actually give Allen methadone, but that he actually took the methadone she brought him, and that the methadone found in the apartment was not simply unknowingly (to Allen) left there by Moody." The State suggests that Long's testimony about the amount of methadone in Allen's system also corroborates Moody's statement that she obtained a tablespoon of methadone to share with Allen.

15

Second, the State suggests that Dr. Long's testimony shows that Moody lied to police when she told them she did not intend for Allen to have the methadone. The State maintains that it needed Long's testimony at trial for the State to prove their case and rebut Moody's defense. The State adds: "In fact, Dr. Long's testimony is the best evidence of Moody's guilt, because it allowed Dr. Mitchell to conclude that Allen had ingested the methadone only a short time before his death, and that Allen was not a long-time methadone user." The State further argues: "The toxicology work performed by Dr. Long was concrete proof that she followed through on her plans made via text message, to try methadone with Allen for the first time." But the State specifically offered the affidavit, not the preliminary hearing testimony, as the factual basis for Count 2 of Moody's plea. Thus, any argument by the State that Long's testimony was used to establish guilt for Count 2 is not persuasive.

While the State did offer the preliminary hearing evidence as a factual basis for Count 1, the record reflects that Long's testimony was for the sole purpose of establishing Allen died from the methadone ingestion. This purpose is clear considering the preliminary hearing took place when Moody was charged with distribution of methadone causing death. And along with the State using the preliminary hearing, the State also submitted "the text messages that are also in the Affidavit showing that she did in fact distribute that controlled substance" as the factual basis for her plea to Count 1.

Thus, the State's arguments suggesting that it would need Dr. Long's testimony to corroborate or provide evidence that Allen ingested the methadone Moody distributed are also not persuasive. The State attempts to relate Long's testimony to Moody's crime of conviction by arguing the laws about distribution of methadone require the State to show Moody specifically intended to give Allen the drug, and that there was an "'actual, constructive, or attempted transfer of an item from one person to another.'" But, as Moody points out, the elements of distribution of methadone do not require the State to

16

prove the actual use of the methadone, the consequences of its use, or to whom it was distributed. See K.S.A. 2018 Supp. 21-5705.

The record reflects that Dr. Long did testify that Allen ingested a small amount of methadone, but that testimony was not used as a factual basis for the crimes to which Moody pleaded guilty. The State did not have to prove Allen ingested the methadone Moody distributed to him and any argument by the State related to this testimony is a stretch. The State specifically included "the text messages that are also in the Affidavit showing that she did in fact distribute that controlled substance" for the factual basis for the plea to Count 1. This further suggests that the testimony of Long was not reasonably related to Moody's crime of conviction. Much like the reasoning in *Richmond*, the State discharged Moody from liability for Allen's death and therefore she should not be responsible for the court costs incurred related to that charge. See 2008 WL 4849342, at *3.

Because the fees for Dr. Long's testimony were unrelated to Moody's ultimate crime of conviction, the trial court abused its discretion in ordering Moody to pay those expenses. Thus, we vacate the court costs assessed against Moody that related to the testimony of Long, $1,182.72.

In sum, we vacate the district court's ordered restitution of $2,653.50. We also vacate $1,182.72 of the court cost order. The balance of the court costs assessed, $1,293, was not challenged by Moody and remain in effect.

Affirmed in part and vacated in part.

17