NOT DESIGNATED FOR PUBLICATION

No. 119,780

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANDREW I. VILLA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Opinion filed October 11, 2019. Vacated and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., LEBEN, J., and WALKER, S.J.

PER CURIAM: The State convicted Andrew I. Villa of a series of offenses stemming from a gas station robbery in 2016. At sentencing, the district court awarded one victim restitution for lost wages as a soccer referee. Villa appeals from the restitution order, arguing that the amount imposed for missed high school games did not match the evidence, and that the restitution order erroneously required Villa to pay twice for lost wages. The State concedes that the district court erred when calculating the lost wages for missed high school soccer games, so the restitution order must be vacated and the case remanded for reconsideration. We also find that there is an inadequate record for us to

determine the merits of Villa's claim that the district court's restitution order amounted to a "double recovery" of lost wages by the victim, and therefore we also reverse and remand for further fact-finding by the district court on that issue.

FACTS

In September 2016, Villa committed a gas station robbery and fled the scene. He eventually dove into the backseat of a car occupied by Bill Keeney Jr. and his wife. Immediately thereafter, a police officer began shooting into the backseat of the car. The shots injured Villa and allowed pursuing officers to subdue and take him into custody.

Villa ultimately pled guilty to charges of robbery, fleeing or attempting to elude an officer, aggravated endangerment of a child, and aggravated burglary. As part of the plea agreement, Villa agreed to pay $5,949.06 to the Crime Victims Compensation Board (CVCB) and "reasonable restitution to Bill Keeney . . . in [an] amount[] to be determined at or prior to sentencing."

At the sentencing hearing, Keeney testified that he suffered from anxiety attacks and posttraumatic stress disorder (PTSD) as a result of the police gunfire. Keeney stated he could not referee soccer games, as he usually did, which hurt him financially. After Keeney testified, the district court determined that Keeney's request for lost wages of $15,040.88 was justified based on the preponderance of the evidence. Soon after announcing this, the district court asked Keeney how many estimated games he had missed, and Keeney indicated he honestly did not know. After being pressed by the district court to estimate, Keeney said he "probably missed out on the opportunity of 75 to 85 games. And, with that being the fall session, that's the college session which . . . pays the best." Keeney said the college games pay anywhere from $120 to $180 a game depending on field location and conference.

2

The district court then asked, "Of those 75 to 85, how many are college games?" Keeney responded that "[t]he majority of the fall is college games" and estimated "55 to 60 games" as an average for the year. Keeney said that high school games "will average anywhere from $30.00 for a [junior varsity] game up to $75.00 if you're doing a playoff game for the state." Keeney also explained that he had lost wages for missing two months of field maintenance work.

After a brief pause, the district again asked Keeney how many of the missed games were college games. In response, Keeney said he estimated "[a]bout 50 of them." Keeney also explained that he had to justify "[m]issed work and trauma appointments" to receive compensation from the CVCB but that he agreed to a $10,000 settlement in a civil suit with the City of Wichita "almost simultaneously." At the time, Keeney said he did not know that he would be responsible for reimbursing the CVCB because of the settlement.

The district court modified the previous restitution amount and awarded the following:

> "50 [collegiate soccer] games times $150.00 per game is $7,500, plus the additional [high school soccer games] at 55 times $30.00 is $1,650. That total is $9,150.00. Plus, $10.00 an hour [for the field maintenance], two months, 25 to 30 hours a week; that's eight weeks. I do 2,750 times eight weeks times $10.00 an hour is equal to $2,200.00. We add $7,500 plus $1,650 plus $2,200 is $11,350. The lost wages is $11,350. You also are entitled and there is restitution for $183.00 and the $200.00 for medical and therapy."

The district court imposed total restitution of $17,682.06, with $5,949.06 going to the CVCB under the plea agreement and $11,733.00 to Keeney.

Villa timely appealed from the district court's restitution order.

ANALYSIS

*Did substantial competent evidence support the district court's award of restitution?*

Villa first argues that the district court's award of restitution for lost high school officiating wages is not supported by substantial competent evidence. He asserts that Keeney's testimony showed he missed out on about 30 high school officiating opportunities but that the district court erroneously found that Keeney's PTSD kept him from officiating 55 high school games.

Appellate review of a restitution order where the issue concerns the "'amount of restitution and the manner in which it is made to the aggrieved party'" is reviewed under the abuse of discretion standard. We review legal questions involving the interpretation of underlying statutes de novo. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). Villa is only contesting the amount of the restitution order, a finding that this court reviews as a factual error under the substantial competent evidence standard. See *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016).

The State concedes that no evidence supported the district court's finding that Keeney missed out on officiating 55 high school soccer games. Because Keeney never specified how many high school games he missed as a result of his PTSD, the State asks us to remand the matter so the district court can clarify its restitution order to reflect the correct number of high school soccer games that Keeney missed.

Here the district court calculated Keeney's total lost wages as $11,350, based on

"50 [collegiate soccer] games times $150.00 per game is $7,500, plus the additional [high school soccer games] at 55 times $30.00 is $1,650. That total is $9,150.00. Plus, $10.00 an hour [for the field maintenance], two months, 25 to 30 hours a week; that's eight weeks. I do 2,750 times eight weeks times $10.00 an hour is equal to $2,200.00."

Villa admits that these calculations comport with the evidence as they relate to Keeney's testimony about the missed collegiate soccer games and the field maintenance work, but he contends that the calculations for the missed high school soccer games were not supported by substantial competent evidence. The State agrees that Keeney's testimony does not support that he missed 55 high school soccer games because he said that he "probably missed out on the opportunity of 75 to 85 games" with "[a]bout 50" of those being college games.

As a matter of simple subtraction, Keeney estimated that he missed around 30 high school soccer games, so the district court's finding that Keeney missed out on 55 high school soccer games was not based on substantial competent evidence. This mathematical error constitutes an abuse of discretion warranting vacation of the restitution order. We agree the appropriate remedy is to vacate the restitution order and remand the case to the district court to correct the amount of restitution for lost wages related to the missed high school soccer games. But the inquiry does not end there.

*Did the district court err by awarding damages for restitution that had already been compensated?*

Villa's second complaint on appeal is that the district court exceeded its statutory authority by awarding restitution for lost wages that had already been compensated. He contends that the district court erroneously ordered him to "double-pay" because he had to reimburse the CVCB for its payment, in part, for Keeney's lost wages and also to pay for Keeney's lost wages directly.

Other than correction of the mathematical error in the district court's restitution order raised in the first issue, Villa does not otherwise challenge the amounts of the district court's lost wage finding. As his appellate counsel succinctly summarizes his requested relief, "[a]t the end of the day though, Mr. Villa is simply asking for a

restitution sentence which requires him to pay damages for Mr. Keeney's lost wages once, not twice."

The State acknowledges that the district court's restitution order may have required Villa to pay twice for Keeney's lost wages because the court appeared to be attempting to compensate Keeney fully for all of his lost wages. The State also notes that Keeney testified he had to reimburse the CVCB for its payment because of a $10,000 settlement with the City of Wichita, which would have inflated his request for lost wages from Villa. Thus, the restitution order would also result in the CVCB being reimbursed by both Villa and Keeney. The State again asks this court to remand the matter to be fully explored by the district court.

Because the State concedes the first issue relating to the lost high school officiating wages and requests a remand of the restitution order, it does not appear to argue fully against Villa's remaining challenges. At this point, given our decision to vacate the restitution order and remand on Villa's first issue, we might not need to make any determinations related to his remaining challenges. However, our review of the record reveals the need for some guidance to the district court concerning the findings needed upon remand.

Villa's arguments on his second issue relate to whether Keeney had already been compensated for his lost wages outside the restitution order. To consider his challenges, we would need to make two determinations: (1) whether the district court should have deducted the portion of the CVCB restitution payment attributable to Keeney's lost wages and (2) whether the civil settlement should have been accounted for when calculating restitution for Keeney's lost wages.

The only evidence before the district court was Keeney's testimony that he received a letter from the CVCB indicating he was required to reimburse it for the

6

CVCB's lost wage payments out of his settlement with the City of Wichita. But the record is not clear as to what portion of the CVCB award to Keeney was exclusively compensation for lost wages and what was attributable to other expenses. Thus we are unable to determine the exact amount Keeney will have to repay the CVCB. And since no evidence concerning the details of the civil settlement was presented to the district court, including whether the CVCB was actually reimbursed from the settlement for its lost wage payout, the district court was obviously unable to engage in specific fact-finding concerning this.

The upshot is that it is distinctly possible, as Villa contends, that the order listed in the journal entry of sentencing requiring him to pay $5,949.06 in restitution to the CVCB means he was ordered to pay double compensation for those lost wages. We simply cannot discern whether this is true from the record before us. Because these details are missing, we concur with the State that, upon remand, the district court should hold a hearing to determine exactly what amounts were paid by the City of Wichita as part of its settlement with Keeney and to what extent the CVCB was to be reimbursed for its lost wage payments to Keeney out of the settlement. If it was reimbursed for lost wage payments, the order for Villa to pay restitution to the CVCB should be modified as appropriate.

In sum, because Villa and the State agree—and the record supports—that the district court erred when calculating the lost wages for missed high school soccer games, we vacate the restitution order and remand with directions to correct the calculations. Additionally, on remand the district court should engage in fact-finding and tailor its order so that the restitution order provides one single compensation to Keeney for his lost wages, in the corrected amount as determined by the court.

Restitution order vacated, and case remanded with directions.