IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,903

STATE OF KANSAS,
*Appellee*,

v.

ROBERT JAMES ROBISON III,
*Appellant*.

SYLLABUS BY THE COURT

1.

The current Kansas criminal restitution statutes do not trigger Sixth Amendment protections as contemplated by *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and its progeny.

2.

At a minimum, section 5 of the Kansas Constitution Bill of Rights protects as inviolate the *procedural* right to have a jury decide the contested questions juries historically decided when the Kansas Constitution came into existence.

3.

The development of modern criminal restitution statutes in Kansas makes criminal restitution virtually identical to a civil judgment. Since civil damages were historically decided by juries, this virtual identity of criminal restitution and civil judgment violates section 5 of the Kansas Constitution Bill of Rights.

4.

When confronting a constitutional flaw in a statute, the court will resolve the problem, if possible, by severing the problematic portions and leaving the remainder intact.

5.

Severing only the problematic portions of the Kansas criminal restitution statutes preserves the societal goals advanced by a judicial sanction of criminal restitution.

6.

The following statutes (or portions of statutes) are unconstitutional: K.S.A. 60-4301; K.S.A. 60-4302; K.S.A. 60-4303; K.S.A. 2020 Supp. 21-6604(b)(2); and only the last sentence of K.S.A. 2020 Supp. 22-3424(d)(1).

7.

A criminal defendant will not be faced with a civil judgment for criminal restitution unless it has been obtained separately through a civil cause of action.

Review of the judgment of the Court of Appeals in 58 Kan. App. 2d 380, 469 P.3d 83 (2020). Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed October 15, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Caroline Zuschek,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Amy L. Aranda*, first assistant county attorney, argued the cause, and *Marc Goodman*, county attorney, and *Derek Schmidt,* attorney general, were with her on the brief for appellee.

2

The opinion of the court was delivered by

WILSON, J.: Robert James Robison III petitions this court for review of two intertwined issues: Whether the order of restitution in his case violates either section 5 of the Kansas Constitution Bill of Rights or the Sixth Amendment of the United States Constitution, if not both. This court granted review on both issues. The issues raised are identical to those raised in *State v. Arnett*, 314 Kan. ___ (No. 112,572, this day decided). Our analysis in this case will take reference liberally from that opinion.

## FACTS AND PROCEDURAL BACKGROUND

The relevant facts are brief and Robison's Court of Appeals decision covers them thoroughly. They are:

"On January 3, 2018, the State charged Robison with two counts of battery of a law enforcement officer in violation of K.S.A. 2017 Supp. 21-5413(c)(3)(D). The charges stemmed from an incident at the Lyon County Jail in which Robison hit Officer Zachary Nance and Corporal Bobby Cutright several times. Corporal Cutright suffered an injury to his eye and a bite on his arm. Following the incident, he went to Newman Regional Health where he received treatment. Lyon County's workers compensation insurance carrier subsequently paid Corporal Cutright's medical bills.

"Prior to trial, the parties entered into a plea agreement in which Robison agreed to plead no contest to one count of battery of a law enforcement officer. In exchange, the State agreed to dismiss the second count and further agreed not to request a fine. On March 20, 2018, the district court accepted Robison's no-contest plea and found him guilty of a single count of battery of a law enforcement officer arising out of the attack on Corporal Cutright. A few months later, the district court sentenced Robison to 32 months' imprisonment and 24 months' post-release supervision. Complying with the terms of the

3

plea agreement, the district court did not impose a fine. However, the district court agreed to consider the State's request for restitution and continued the resolution of the request until a later date.

"At a restitution hearing held on August 21, 2018, the State requested that Robison pay $2,648.56 in restitution to reimburse the workers compensation insurance carrier that paid Corporal Cutright's medical bills arising out of the battery. A hospital employee testified about the medical bills and verified that they had been paid by the insurance carrier. Robison's counsel did not dispute the amount of the medical bills or that they arose out of the attack on Corporal Cutright. Instead, defense counsel argued that the workers compensation insurance carrier was not entitled to restitution and had not requested reimbursement.

"After considering the evidence and the arguments of counsel, the district court found that the medical bills incurred by Corporal Cutright were caused by Robison's crime and that Lyon County's insurance carrier had paid the medical expenses on the officer's behalf. Accordingly, the district court ordered Robison to pay restitution in the amount of $2,648.56 to reimburse the workers compensation insurance carrier for the medical expenses it had paid." *State v. Robison*, 58 Kan. App. 2d 380, 381-82, 469 P.3d 83 (2020).

On appeal, Robison argued three issues: (1) The Kansas restitution statutes violate section 5 of the Kansas Constitution Bill of Rights because they encroach upon a criminal defendant's common law right to a civil jury trial on damages caused by the defendant's crime. (2) His right to a jury trial on the issue of restitution under the Sixth Amendment of the United States Constitution was violated because the statutes allowed the court to make a finding of fact that increased the penalty for his crime beyond the prescribed statutory maximum. (3) The statutes governing restitution preclude district courts from awarding restitution to an insurance carrier that has paid the victim's medical expenses caused by a criminal defendant.

4

The panel found against Robison on each of these three issues and affirmed the district court's restitution order. 58 Kan. App. 2d at 381. Robison petitioned this court for review of only the first two issues, which this court granted. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review). After the court heard oral arguments, Robison filed a Motion to Supplement Oral Argument, to which the State did not file a response. The motion is granted. The court has considered the arguments and authorities cited in the motion.

*Preservation*

Robison did not raise these issues before the district court. Generally, a constitutional issue not raised before the district court is considered abandoned. But this court can review issues presented on appeal where: "(1) the newly asserted theory involves only a question of law arising on proved or admitted facts . . . ; (2) consideration of the theory is necessary to serve the ends of justice or to prevent [a] denial of fundamental rights"; or (3) the district court's judgment is correct for the wrong reason. *State v. Perkins*, 310 Kan. 764, 768, 449 P.3d 756 (2019). But "'[t]he decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, [this court has] no obligation to do so.' [Citations omitted.]" *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020).

The right to a jury trial is a fundamental right under both section 5 of the Kansas Constitution Bill of Rights and under the Sixth Amendment to the United States Constitution. *State v. Rizo*, 304 Kan. 974, 979-80, 377 P.3d 419 (2016). We elect to reach both questions under the second exception.

5

*Analysis*

As in *Arnett*, our analysis first looks at the statutes which make up the "restitution scheme" being challenged by Robison. K.S.A. 2017 Supp. 21-6604(b)(1) grants a district court the authority to order the defendant to pay restitution as part of the sentence. The statute dictates that the restitution amount "shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable."

In the same way, K.S.A. 2017 Supp. 21-6607(c)(2) gives the district court the authority to order restitution payments as a condition of probation. Based on the clear language of the statutes, "'restitution for a victim's damages or loss depends on the establishment of a causal link between the defendant's unlawful conduct and the victim's damages.' [Citations omitted.]" *State v. Alcala*, 301 Kan. 832, 837, 348 P.3d 570 (2015).

*Criminal restitution does not violate the Sixth Amendment to the United States Constitution.*

*Standard of review*

Determining a statute's constitutionality is a question of law subject to unlimited review. *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014).

*Discussion*

We begin with Robison's argument that the restitution statutes in question offend his right to a jury trial under the Sixth Amendment to the United States Constitution.

6

The Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. The Supreme Court of the United States has established that this right to a jury covers any fact which increases the maximum penalty for a crime—other than a prior conviction—and such facts must be submitted to a jury and proven beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The Supreme Court further established that any facts which increase a mandatory *minimum* penalty must also be decided by a jury. See *Alleyne v. United States*, 570 U.S. 99, 102, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). The reasoning is that when "a judge inflicts punishment that the jury's verdict alone does not allow," the judge has exceeded his authority. *Blakely v. Washington*, 542 U.S. 296, 304, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

Most federal courts confronted with the question have concluded restitution does not run afoul of the Sixth Amendment. Largely, these courts have followed one of two analytical paths to conclude either that criminal restitution is not punishment or to find that restitution statutes do not specify a maximum award. See *United States v. Bonner*, 522 F.3d 804, 807 (7th Cir. 2008) (restitution is not a criminal punishment); see also *United States v. Sawyer*, 825 F.3d 287, 297 (6th Cir. 2016) (restitution is considered punishment but is not affected by *Apprendi* because statutes do not specify a statutory maximum). Sometimes the courts have taken a more hybrid approach. See *United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013) (restitution is only punishment in some contexts but is "not clearly" punishment covered by *Apprendi*); *United States v. Leahy*, 438 F.3d 328, 338 (3d Cir. 2006) (Although restitution is criminal punishment, its essence is a restorative remedy that compensates victims and does not make a defendant's punishment more severe.).

7

As our own Court of Appeals observed below, at least 11 of 13 federal United States Circuit Courts of Appeal have refused to extend *Apprendi* and its progeny to orders of restitution, not to mention the many state courts which have followed suit. *State v. Robison*, 58 Kan. App. 2d 380, 389-90, 469 P.3d 83 (2020). Following that lead, the Kansas Court of Appeals has also declared criminal restitution non-punishment for Sixth Amendment purposes. *Robison*, 58 Kan. App. 2d at 392; *State v. Huff*, 50 Kan. App. 2d 1094, 1100, 336 P.3d 897 (2014).

Outside the context of this question, this court has previously acknowledged that restitution serves many purposes separate from criminal punishment, including victim compensation, deterrence, and rehabilitation of the guilty. *State v. Applegate*, 266 Kan. 1072, 1075, 976 P.2d 936 (1999).

Despite the nonuniform approach taken by federal circuits, the Supreme Court has remained silent on whether criminal restitution triggers the right to a jury as contemplated in *Apprendi*, even when presented with opportunities to take up the question. See *United States v. Green*, 722 F.3d 1146 (9th Cir.), *cert. denied* 571 U.S. 1025 (2013); *United States v. Day*, 700 F.3d 713 (4th Cir. 2012), *cert. denied* 569 U.S. 959 (2013).

The Supreme Court once again denied a petition for a writ of certiorari in a case that would have answered that question in *Hester v. United States*, 139 S. Ct. 509, 202 L. Ed. 2d 627 (2019). But this time, Justice Gorsuch—joined by Justice Sotomayor— dissented from the denial of certiorari, arguing that under either analytical path, restitution is within reach of the Sixth Amendment's protections and should trigger the right to a jury trial. *Hester*, 139 S. Ct. at 511 (Gorsuch, J., dissenting).

Although this two-justice dissent might signal that the Supreme Court will eventually take up the question, the majority has thus far been content to allow the lower

courts to continue ruling that restitution does not implicate a defendant's Sixth Amendment right to a jury. We see no reason why we should take up that mantle in its place. While the theoretical bases upon which the various circuit courts relied are not uniform, we need not resolve these differences here. We are content to side with the majority of the circuit courts of appeal.

*The current structure of criminal restitution violates section 5 of the Kansas Constitution Bill of Rights but is remedied by severance.*

Next, we turn to the question of whether the Kansas criminal restitution statutes violate section 5 of the Kansas Constitution Bill of Rights.

*Standard of review*

As noted above, a statute's constitutionality is a question of law subject to unlimited review. *Soto*, 299 Kan. at 121.

*Discussion*

Section 5 of the Kansas Constitution Bill of Rights states that "[t]he right of trial by jury shall be inviolate." Citing *Miller v. Johnson*, 295 Kan. 636, 289 P.3d 1098 (2012), a plurality of this court declared "'[s]ection 5 preserves the jury trial right as it historically existed at common law when our state's constitution came into existence'" in 1859. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1133, 442 P.3d 509 (2019). A majority of this court has ruled the "right as it historically existed" protects as inviolate at least the *procedural* right to have a jury decide the contested questions juries historically decided. *Hilburn*, 309 Kan. at 1133 (plurality holding that "[s]ection 5 preserves the jury trial right as it historically existed at common law"); *Hilburn*, 309 Kan. at 1151 (Stegall, J.,

9

concurring) (stating that the "section 5 'right of trial by jury' that 'shall be inviolate' is a procedural right").

Consequently, we begin our analysis of the section 5 challenge with whether territorial juries would have decided the issue of criminal restitution in 1859. If so, under *Hilburn*, section 5 of the Kansas Constitution would clearly apply, requiring juries also to decide it now. See *Hilburn*, 309 Kan. at 1134. On the other hand, if judges decided the issue of criminal restitution in 1859, section 5 would not apply.

It is not so simple. The concept of criminal restitution as we know it today was not part of the common law at all in 1859. Since it did not exist, it follows that it could not have been decided by juries *or* judges.

So we explore further. At common law, a victim would have been able to recover damages caused by a criminal act through civil suit with a finding of causation and damages. Civil defendants in those actions had a right to demand a jury trial. There is no dispute that the amount of damages—and causation—was a question of fact to be determined by the jury in common-law tort actions. *Miller*, 295 Kan. at 647; see *St. Clair v. Denny*, 245 Kan. 414, 417, 781 P.2d 1043 (1989). Consequently, Robison would have us find that because criminal restitution orders now allow those same crime victims to be compensated for losses just as if they were successful tort plaintiffs, criminal defendants should enjoy that same right to a jury trial.

This court has consistently noted that when the section 5 jury trial right is implicated, it applies no further than to give the right of such trial upon issues of fact so tried at common law. The right to have the jury determine issues of fact is contrasted with the determination of issues of law, which have always been left to the court. See *State v. Love*, 305 Kan. 716, 735, 387 P.3d 820 (2017) (citing General Laws of the Territory of

10

Kansas, 1859, ch. 25, § 274 ["[I]ssues of law must be tried by the court. . . . Issues of fact arising in action, for the recovery of money, or of specific, real or personal property, shall be tried by a jury."]). Therefore, Robison's argument hinges on analogizing modern criminal restitution to causation and damages in a civil suit.

As in *Arnett*, the Court of Appeals in the present case was faced with this argument—analogizing criminal restitution orders to causation and civil damages in tort—and concluded these remedies are distinct. Criminal restitution is not a civil judgment and is therefore not covered by section 5. *Robison*, 58 Kan. App. 2d at 386.

But the panel was also faced with another argument. Taking a deep dive into our state's history, Robison argued that not only did Kansas juries decide the amount of civil damages in tort prior to statehood, but juries were also required to determine the value of stolen property for certain theft offenses in criminal cases. See Kan. Terr. Stat. 1859, ch. 25, § 274; Kan. Terr. Stat. 1859, ch. 27, § 219. Consequently, by analogy, Robison asserts that Kansas juries *would* have had to determine the amount of criminal restitution in 1859 because it is yet another example of juries determining the amount of loss or damage caused to a victim.

The majority of the *Robison* panel was not persuaded, instead turning to the State's rebuttal that the reason juries had to make a factual finding regarding the value of stolen property was because that factual determination affected the *severity level* of the offense. See Kan. Terr. Stat. 1859, ch. 28, §§72-74, 82-88, 91. The panel majority maintained that because criminal restitution is not a civil remedy—and criminal restitution was not listed in the Kansas territorial statutes as a permissible remedy for any crime in 1859—the defendant failed to establish that section 5 of the Kansas Constitution Bill of Rights would require a jury to impose criminal restitution under K.S.A. 2017 Supp. 21-6604(b)(1) and K.S.A. 2017 Supp. 21-6607(c)(2). 58 Kan. App. 2d at 386. We agree with

this assessment. Moreover, we note that the territorial statutes contained no mechanism by which an aggrieved victim could obtain recompense for the value of stolen goods, as determined by a jury in a criminal trial; that recovery, if any, would flow only through a civil proceeding—including, potentially, a trial by jury.

This court's precedent has previously held that restitution ordered in criminal proceedings and civil damages are separate and independent remedies under Kansas law. *State v. Applegate*, 266 Kan. 1072, 1078, 976 P.2d 936 (1999). Because they are distinct remedies,

> "[t]he judge's order of restitution in a criminal action does not bar a victim from seeking damages in a separate civil action. Likewise, the judge, when sentencing a defendant in a criminal action, is not foreclosed from ordering restitution just because the victim has received compensation in a civil action." *Applegate*, 266 Kan. at 1079.

When framed as two unique avenues to recovery—with separate standards and implications—it would follow that criminal restitution does not trigger the same protections afforded to defendants in civil actions.

Then what, one may ask, is the difference? While many legal scholars and editors have weighed in on the subject, the following is one explanation that can be used to understand this court's holding in *Applegate*.

> "Criminal restitution is not the equivalent of civil damages. The criminal sanction of restitution and the civil remedy of damages further distinct societal goals. . . . Unlike a civil claim for damages, the purpose of restitution in a criminal case is twofold: (1) to compensate the victim and (2) to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system. The restitution order has complications and effects which the ordinary civil money judgment lacks. It necessarily holds incarceration over the head

12

of the defendant like a sword of Damocles to enforce payment in a way that civil judgments cannot.

. . . .

". . . A final judgment in a civil case speaks instantly; it fixes the amount due and compensates a plaintiff for a delay in payment by including an award of post-judgment interest. . . . [T]he award of restitution can include installment payments enforceable as a condition of probation—a remedy not available in a civil lawsuit.

"Another difference between restitution and civil damages is that the State is a party to the case and, consistent with the twofold purpose of restitution, while the victim's wishes concerning restitution are relevant, they are not dispositive–it is the judge, not the victim, who must weigh society's competing needs and make the determination of whether or not restitution will be imposed and, if so, to what extent. It is for this reason that a defendant cannot foreclose restitution in a criminal case through execution of a release of liability or satisfaction of payment by the victim.

"Criminal restitution is rehabilitative because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty affects the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine. Restitution is also retributive, particularly in cases of theft or fraudulent conduct, in that it seeks to take ill-gotten gains from the defendant." Criminal restitution and civil damages, 16 Fla. Prac., Sentencing § 10:3 (2020-2021 ed.).

Thus, criminal restitution and civil actions are *not* merely two ways for simply making a victim whole. But we cannot ignore the development of the modern criminal restitution statutes which are confronting Robison. These statutes include several relevant provisions that did not exist or that the court did not have cause to consider at the time of

13

*Applegate*. K.S.A. 2017 Supp. 21-6604(b)(2) states that the order of restitution shall be a judgment against the defendant that may be collected by the court by garnishment or other execution as on judgments in civil cases. Likewise, K.S.A. 2017 Supp. 22-3424(d)(1) states that the order of restitution shall be enforced as a judgment, specifically pursuant to K.S.A. 60-4301 through K.S.A. 60-4304, all of which make criminal restitution virtually identical to a civil judgment. K.S.A. 2017 Supp. 60-4301 states in pertinent part,

> "The clerk of the district court shall record the judgment of restitution in the same manner as a judgment of the district court of this state pursuant to the code of civil procedure. A judgment so filed *has the same effect* and is subject to the same procedures, defenses and proceedings as a judgment of a district court of this state and *may be enforced or satisfied in like manner*, except a judgment of restitution shall not constitute an obligation or liability against any insurer or any third-party payor." (Emphases added.)

As shown from the plain text, the only difference enumerated in the statute between civil judgments and orders of restitution is that orders of restitution are not enforceable against insurers or any third-party payor. This is simply not enough to differentiate the two remedies. Regarding K.S.A. 60-4302 through K.S.A. 60-4304, all presume an order of criminal restitution will be filed and enforced as a civil judgment.

Although K.S.A. 60-4301 was in effect at the time of *Applegate*, that court did not address it—or its section 5 implications—because it was not necessary to resolve the issues in that case. However, when the *Applegate* court stated "[r]estitution imposed as a condition of probation is not a legal obligation equivalent to a civil judgment, but rather an option which may be voluntarily exercised by the defendant to avoid serving an active sentence," it directly cited a Court of Appeals case which was decided *before* K.S.A. 60-4301 was enacted. *Applegate*, 266 Kan. at 1075 (citing *Church Mut. Ins. Co. v. Rison*, 16 Kan. App. 2d 315, 318, 823 P.2d 209 [1991]).

14

In the days before these statutes, it was true that criminal restitution was not a legal obligation equivalent to a civil judgment, for all the reasons explained above. The *Rison* case cited by the *Applegate* court demonstrates that very well from a practical, as opposed to theoretical, point of view. There, the defendant was ordered to pay criminal restitution as a condition of his probation. After his discharge from probation—and after the statute of limitations for a civil action had run—he ceased making restitution payments. Because restitution and civil actions were truly separate remedies at the time, the insurance company was barred by the statutes of limitation from pursuing a civil action and the defendant's payment of restitution during his probation did nothing to toll that applicable statute of limitations. See *Rison*, 16 Kan. App. 2d at 320.

But in the framework of our *current* criminal restitution statutes, we cannot continue to say that restitution is not equivalent to civil judgments, at least to the level that—if left untouched—it would implicate the right to a jury under section 5. Under current law, the district court is required to order the defendant to pay restitution which includes, but is not limited to, damage or loss caused by the defendant's crime, as determined by that judge. See K.S.A. 2020 Supp. 21-6604(b); K.S.A. 2020 Supp. 21-6607(c)(2). As established above, once the judge decides the amount of loss to the victim proximately caused by the defendant's crime, that award becomes a civil judgment, which may be enforced the same as any other civil judgment. K.S.A. 2017 Supp. 21-6604(b)(2); K.S.A. 60-4301. By allowing the judge to determine the legal damages proximately caused by the crime, rather than a jury, and then converting that determination into a civil judgment for the victim, the statutory scheme bypasses the traditional function of the jury to determine civil damages, thereby implicating section 5. See *Missouri, K. & T.R. Co. v. L.A. Watkins Merch. Co.*, 76 Kan. 813, 815, 92 P. 1102 (1907) (existence and extent of injury caused by defendant are questions of fact to be determined by a jury). More so,

unlike most other civil judgments, a modern judgment for restitution never becomes dormant. See K.S.A. 2020 Supp. 60-2403(b).

So what is the remedy for judicially determined restitution under our current statutory scheme? Robison suggests it must be to vacate his order of restitution because it was determined by a judge and not a jury. But his preferred remedy goes too far. Although the development of criminal restitution as a full-fledged and unhindered civil judgment is concerning to the validity of any order of restitution, we do not find that it necessitates invalidating every order of restitution made by a district court outside the purview of a jury. To do so would be to blindly disregard every valid justification in those rulings for having a separate avenue to recovery for crime victims. It would also ignore an effective, but more focused, solution.

When confronting a constitutional flaw in a statute, we will resolve the problem, if possible, by severing the problematic portions and leaving the remainder intact.

> "Whether the court may sever an unconstitutional provision from a statute and leave the remainder in force and effect depends on the intent of the legislature. If from examination of a statute it can be said that (1) the act would have been passed without the objectionable portion and (2) if the statute would operate effectively to carry out the intention of the legislature with such portion stricken, the remainder of the valid law will stand. This court will assume severability if the unconstitutional part can be severed without doing violence to legislative intent." *Gannon v. State*, 304 Kan. 490, 491, 372 P.3d 1181 (2016).

We acknowledge that this solution is not always possible, and this court has, in the past, declared entire acts void after we were unable to sever the unconstitutional provision from its companions. See *Gannon*, 304 Kan. at 520 (citing *State ex rel. v. Hines*, 163 Kan. 300, 322, 182 P.2d 865 [1947]; *Sedlak v. Dick*, 256 Kan. 779, 803-04,

16

887 P.2d 1119 [1995]; *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1023, 850 P.2d 773 [1993]; and *Boyer v. Ferguson*, 192 Kan. 607, 389 P.2d 775 [1964]). But we find no such hindrances here.

If we use precision to sever the problematic statutory language from the rest of the Kansas criminal restitution statutes and invalidate only those portions making orders of restitution civil judgments, it preserves the societal goals advanced by a judicial sanction of restitution within the context of a criminal case without infringing on a defendant's— or a victim's—right to a jury trial in a civil setting. Because these goals are still advanced without the offending portions of the statute, the remainder has satisfied the "*Gannon* test" and may stand.

Accordingly, we hold the following statutes or portions of statutes to be unconstitutional and sever them:

K.S.A 60-4301, which establishes that an order of restitution shall be filed, recorded, and enforced as a civil judgment, in its entirety;

K.S.A. 60-4302, which sets forth notice requirements when an order of restitution is filed as a civil judgment, in its entirety;

K.S.A. 60-4303, which establishes the docket fee when filing an order of restitution as a civil judgment, in its entirety;

K.S.A. 2020 Supp. 21-6604(b)(2), which dictates that if the court orders restitution, the restitution shall be a judgment against the defendant that may be collected by the court by garnishment or other execution as on judgments in civil cases in accordance with K.S.A. 60-4301 et seq.; and

17

Finally, only the last sentence of K.S.A. 2020 Supp. 22-3424(d)(1) which reads, "If the court orders restitution to be paid to the victim or the victim's family, the order shall be enforced as a judgment of restitution pursuant to K.S.A. 60-4301 through 60-4304, and amendments thereto."

Further explanation of our decision to sever the entirety of K.S.A. 2020 Supp. 21-6604(b)(2) is in order. This subsection refers to the court's ability to order collection of restitution by "garnishment or other execution." It, in part, demonstrates the court's flexibility when it comes to enforcing orders of criminal restitution. That alone would not offend section 5. The problem with the statute is that, as worded, it is too difficult to uncouple the acceptable provisions from those provisions that violate section 5. Thus, it is necessary to sever the entire subsection. We recognize that a court may still enforce its order of criminal restitution through lawful means if the court has cause to believe a defendant is not in compliance. Those means still include the potential for court-ordered garnishment. And the defendant still retains the ability to object to such garnishment and justify why garnishment is not appropriate, i.e., to show the court how he is taking reasonable steps to comply with the restitution order.

With today's holding, restitution may still be imposed by a judge either as part of the sentence—as contemplated by K.S.A. 2020 Supp. 21-6604(b)—or as a condition of probation—as contemplated by K.S.A. 2020 Supp. 21-6607(c)(2).

However, a criminal defendant will not be faced with a civil judgment for restitution unless it has been obtained separately through a civil cause of action. In this way, criminal restitution is—once again—not a legal obligation equivalent to a civil judgment and does not violate section 5.

18

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

STANDRIDGE, J., not participating.

* * *

ROSEN, J., dissenting: Consistent with my position in *State v. Arnett*, 314 Kan. ___ (No. 112,572, this day decided), and *State v. Owens*, 314 Kan. __ (No. 120,753, this day decided), I dissent from the majority's conclusions that the Kansas criminal restitution scheme does not violate the right to jury trial under the Sixth Amendment to the United States Constitution or section 5 of the Kansas Constitution Bill of Rights. I would adopt the reasoning set forth in Judge Leben's dissent in this case *State v. Robison*, 58 Kan. App. 2d 380, 395, 469 P.3d 83 (2020), and Justice Standridge's dissent that I joined in *Arnett,* slip op. at 19-36, to hold that our criminal restitution statutes are unconstitutional because they allow a judge—rather than a jury—to determine how much a criminal defendant must pay in restitution. I would vacate the restitution order entered in this case.

19