NOT DESIGNATED FOR PUBLICATION

No. 122,520

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEANDRE MALIK PALMER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Opinion filed December 30, 2021.
Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: Deandre Malik Palmer was ordered to serve a prison sentence and pay restitution after he pleaded guilty to aggravated arson for starting a fire in a Best Western hotel. The district court ordered Palmer to pay $5,000 in restitution to Best Western for the deductible Best Western paid to its insurance carrier, Midwest Family Mutual, and $101,112.47 in restitution to Midwest for the cost to repair the fire damage. Palmer now argues the restitution portion of his sentence was illegal for including payment to Midwest and for failing to include a payment plan. Palmer also claims the

court abused its discretion by ordering him to pay a restitution amount which he alleges is unworkable. After a thorough review of the record and arguments on appeal, we affirm.

FACTS

Palmer set his hotel room on fire and then tried to hang himself by jumping out of the window. He was charged with aggravated arson, a severity level 3 person felony, in violation of K.S.A. 2018 Supp. 21-5812(b)(1), (c)(2)(A)(i). Palmer entered a plea agreement with the State, in which he agreed to plead guilty but reserved the right to contest whether payment of $5,000 in restitution to Best Western would be workable. The parties agreed to hold a presentencing hearing to determine what restitution, if any, Midwest should receive.

At the restitution hearing, a Midwest insurance adjustor testified about the damage caused by the fire. The adjustor testified that room 309, where Palmer set the fire, needed to be gutted entirely. She also explained that Palmer had apparently broken a pipe in the fire suppression system in his suicide attempt, which caused water to gush (instead of spray) into the room and throughout the hotel. Several rooms, hallways, elevator lobbies, and vending rooms on both the second and third floors sustained water damage, from both the damaged fire suppression system as well as the fire department's efforts to contain the fire. Meeting rooms on the third floor, stairwells on all three levels of the hotel, the entry foyer, the breakfast area, the laundry room, a men's room, a sitting area, the elevator equipment room, and even the elevator itself also sustained damage. She said the total repair cost submitted to Midwest (not including the deductible) was $114,086.53. That said, Midwest only sought $101,112.47 in restitution from Palmer, explaining the reduced amount considered depreciation as well as the $5,000 deductible.

At the hearing, Palmer did not object to paying $5,000 to Best Western, but he contested paying the full amount sought by Midwest. Palmer claimed insufficient

2

evidence supported Midwest's claim that he caused the water damage found in the other locations throughout the hotel. Palmer asked the district court to find restitution payable to Midwest in an appropriate amount, but not a windfall.

The district court ordered Palmer to pay the full amount Midwest requested, noting Midwest sought a reduced amount and finding that, but for Palmer's actions, none of the damage would have occurred.

As for workability, Palmer's counsel argued the amount sought by Midwest was unworkable based on Palmer's: (1) limited education (he only had a high school diploma), (2) financial status (he was previously working a job that paid only $10 an hour), and (3) employment history (he had been working labor jobs in the construction field). While Palmer's counsel suggested Palmer planned to pursue further education while in prison, she argued his future earning capacity was unknown, as were his future financial obligations and debts once released. Based on these factors, Palmer's counsel argued he would be unable to pay this restitution amount in his lifetime. The State countered that it would be premature to declare restitution unworkable, as Palmer would not have to make restitution payments until released.

The district court was unpersuaded by Palmer's workability arguments, noting his financial status upon release was unknown. It sentenced Palmer to 48 months in prison, followed by 36 months' postrelease supervision. The court imposed the full amount of restitution requested, which included $101,112.47 payable to Midwest and $5,000 payable to Best Western. The court made Palmer's restitution a condition of his postrelease supervision and noted it was "immediately due and owing" in its journal entry of sentencing.

ANALYSIS

*Restitution to Midwest*

Palmer argues on appeal that the district court erred in awarding restitution to Midwest. He presents two arguments, both of which he failed to raise below. First, he argues insurance carriers are not entitled to restitution under K.S.A. 2018 Supp. 21-6604(b)(1). Next, he argues substantial competent evidence did not support the district court's conclusion that Midwest suffered an actual loss from his crime.

Palmer contends that he preserved these issues because his attorney objected to the district court awarding a "windfall" to Midwest, but his arguments on appeal are distinctly different. While Palmer asked the district court to avoid a windfall and order an appropriate amount of restitution payable to Midwest, he asks us to find the district court erred in granting *any* award to Midwest. His supporting arguments are also different. Below, Palmer contested the amount of restitution based on the lack of causation linking his crime to the additional water damage found in other areas of the hotel. He does not raise this argument on appeal. Instead, he argues for the first time that (1) K.S.A. 2018 Supp. 21-6604(b)(1) does not permit restitution awards to insurance carriers such as Midwest and (2) substantial competent evidence did not support the district court's finding that Midwest suffered an actual loss because the State failed to present evidence of the premium payments Best Western made to Midwest, which Palmer now argues should have been deducted from the restitution amount.

We seldom consider issues not raised before the district court—including those involving restitution. See *State v. King*, 288 Kan. 333, 353-54, 204 P.3d 585 (2009); *State v. Hunziker*, 274 Kan. 655, 669, 56 P.3d 202 (2002). Although we have the discretion to consider a newly raised issue "'if the party trying to raise a new issue shows a recognized exception to the general rule,'" Palmer failed to do so here. *State v. Allen*, 314 Kan. ___,

4

497 P.3d 566, 570 (2021). What is more, Palmer's arguments requiring the amount of Midwest's "actual loss" would require us to make factual findings, which we cannot do. See 497 P.3d at 570 ("An appellate court abuses its discretion to take up a newly raised issue if deciding its merits would require the court to make factual findings such as credibility determinations, resolving evidentiary conflicts, and reweighing evidence. These are typically tasks an appellate court may not perform when the factual issues could have been fully litigated before the appeal.").

Appellate courts are courts of review, so we do not ordinarily consider arguments the district court did not have an opportunity to rule upon. *Huffman v. Meier's Ready Mix, Inc.*, No. 120,971, 2021 WL 219235, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 313 Kan. 1040 (2021). Because Palmer failed to challenge the district court's ability to order any restitution payable to Midwest and the sufficiency of the evidence supporting this award below, we find he has waived and abandoned these issues on appeal. See *King*, 288 Kan. at 353-54; *Hunziker*, 274 Kan. at 669.

*Restitution Payment Plan*

Palmer next argues the restitution order is illegal because he claims K.S.A. 2018 Supp. 21-6604(b) requires the district court to establish a payment plan when ordering restitution, and the district court failed to do so. Palmer acknowledges that he did not raise this issue before the district court. But because K.S.A. 2020 Supp. 22-3504 provides the legal authority to correct an illegal sentence at any time, we may consider Palmer's argument for the first time on appeal. See *State v. Hambright*, 310 Kan. 408, 411, 447 P.3d 972 (2019) ("Under K.S.A. 22-3504, '[t]he court may correct an illegal sentence at any time,' and, therefore, this court may consider an illegal sentence challenge for the first time on direct appeal.").

Whether a sentence is illegal is a question of law over which we exercise unlimited review. This issue also involves statutory interpretation—another question of law over which we exercise unlimited review. *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019).

Restitution is part of a criminal defendant's sentence. *State v. Johnson*, 309 Kan. 992, 996, 441 P.3d 1036 (2019). A sentence is illegal if it does not conform to the applicable statutory provisions, either in character or punishment. K.S.A. 2020 Supp. 22-3504(c)(1); *Hambright*, 310 Kan. at 411. Because Palmer committed his offense in February 2019, K.S.A. 2018 Supp. 21-6604(b) governed imposing restitution orders at his sentencing. The relevant portion stated:

> "(1) . . . [T]he court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render *a plan of restitution* unworkable. . . . If the court finds *a plan of restitution* unworkable, the court shall state on the record in detail the reasons therefor.
> "(2) . . . If, after 60 days from the date restitution is ordered by the court, a defendant is found to be in noncompliance with *the plan established by the court for payment of restitution*, . . . the court shall assign an agent . . . to collect the restitution on behalf of the victim." (Emphases added.) K.S.A. 2018 Supp. 21-6604(b).

A panel of this court interpreted the 2017 version of this subsection—which is identical to the 2018 version—and concluded the statute does not require the district court to establish a plan for the payment of restitution. *State v. Garza*, No. 118,840, 2019 WL 1412444, at *5 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1066 (2019).

After *Garza*, a different panel of this court addressed the same question and reached the opposite conclusion, holding that K.S.A. 2018 Supp. 21-6604(b)(2) required

6

the district court to establish a restitution payment plan. *State v. Roberts*, 57 Kan. App. 2d 836, 844, 461 P.3d 77 (2020), *vacated and remanded* No. 120,377, 2020 WL 8269363, at *1 (order filed September 29, 2020). But after the *Roberts* opinion, the Kansas Legislature amended K.S.A. 21-6604 by removing all references to a restitution "plan" in subsection (b):

> "(1) . . . [T]he court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime. Restitution shall be due immediately unless:  (A) The court orders that the defendant be given a specified time to pay or be allowed to pay in specified installments; or (B) the court finds compelling circumstances that would render *restitution* unworkable, either in whole or in part. . . . If the court finds *restitution* unworkable, either in whole or in part, the court shall state on the record in detail the reasons therefor.
>
> "(2) . . . If, after 60 days from the date restitution is ordered by the court, a defendant is found to be in noncompliance with *the restitution order*, . . . the court shall assign an agent . . . to collect the restitution on behalf of the victim." (Emphases added.) K.S.A. 2020 Supp. 21-6604(b).

The Legislature also added new subsections (v) and (b)(3). Subsection (v) made the amendments retroactive, and subsection (b)(3) provided a window of time for defendants to file a motion to allow for payment of restitution in installments:

> "If a restitution order entered prior to the effective date of this act does not give the defendant a specified time to pay or set payment in specified installments, the defendant may file a motion with the court prior to December 31, 2020, proposing payment of restitution in specified installments. The court may recall the restitution order from the agent assigned pursuant to K.S.A. 20-169, and amendments thereto, until the court rules on such motion. If the court does not order payment in specified installments or if the defendant does not file a motion prior to December 31, 2020, the restitution shall be due immediately." K.S.A. 2020 Supp. 21-6604(b)(3).

See K.S.A. 2020 Supp. 21-6604(v).

These amendments became effective on June 11, 2020. L. 2020 ch. 9, § 1. The Kansas Supreme Court then summarily vacated the *Roberts* opinion and remanded the case to the panel to consider the statutory amendments to K.S.A. 2019 Supp. 21-6604 and K.S.A. 2019 Supp. 21-6607. *State v. Roberts*, No. 120,377, 2020 WL 8269363, at *1 (order filed September 29, 2020).

Palmer only relies on *Roberts*, 57 Kan. App. 2d at 844-45, to support his assertion that K.S.A. 2018 Supp. 21-6604(b) requires district courts to establish a payment plan. Not only did the Kansas Supreme Court summarily vacate and remand *Roberts*, but every other panel of this court that has addressed the question has found the statute does not require the district court to establish a payment plan. See *State v. Jackson*, No. 121,827, 2021 WL 4693244, at *14, 16 (Kan. App. 2021) (unpublished opinion), *petition for rev. filed* November 8, 2021; *Garza*, 2019 WL 1412444, at *5. *Jackson* and *Garza* both reached this conclusion by, in part, referencing *State v. Alderson*, 299 Kan. 148, 151, 322 P.3d 364 (2014), and *State v. Jamerson*, 54 Kan. App. 2d 312, 316-17, 399 P.3d 246 (2017). See *Jackson*, 2021 WL 4693244, at *16; *Garza*, 2019 WL 1412444, at *5. As the *Garza* panel explained, the Kansas Supreme Court held in both *Alderson* and *Jamerson* that if a district court does not make it clear that restitution is due immediately, then it becomes due upon the defendant's release from prison. *Garza*, 2019 WL 1412444, at *5. Both the *Garza* panel and the *Jackson* panel also cited *State v. Alcala*, 301 Kan. 832, 840, 348 P.3d 570 (2015), in which the Kansas Supreme Court upheld a restitution order without a payment plan. *Jackson*, 2021 WL 4693244, at *16; *Garza*, 2019 WL 1412444, at *5. And last, both panels noted the statute never mentioned any sort of payment plan that must be set up by the district court. *Jackson*, 2021 WL 4693244, at *16; *Garza*, 2019 WL 1412444, at *5. The panel in *Garza* explained that the phrase "plan of restitution" merely referred to the plan that a defendant begin paying restitution upon release from prison—citing *Alderson*, 299 Kan. at 151. *Garza*, 2019 WL 1412444, at *5. Palmer provides us no compelling reason to depart from this line of cases and follow the now vacated *Roberts* decision.

As an alternative argument, Palmer asks us to remand the case to the district court pursuant to K.S.A. 2020 Supp. 21-6604(b)(3) for the district court to establish a payment plan. Because Palmer's case was on appeal when the Kansas Legislature added K.S.A. 2020 Supp. 21-6604(b)(3), Palmer may receive the benefit of this change. See *State v. McAlister*, 310 Kan. 86, 91, 444 P.3d 923 (2019) ("'[I]n a direct appeal, a defendant will receive the benefit of any change in the law that occurs while the direct appeal is pending.'").

Several panels of this court have considered the same request for a remand that Palmer makes. See *Jackson*, 2021 WL 4693244, at *17-18; *State v. Barrett*, No. 122,410, 2021 WL 4352530, at *4-5 (Kan. App. 2021) (unpublished opinion), *petition for rev. filed* October 25, 2021; *State v. Logan*, No. 122,116, 2021 WL 645929, at *4-5 (Kan. App.) (unpublished opinion), *rev. denied* 314 Kan. __ (2021). As those cases note, K.S.A. 2020 Supp. 21-6604(b)(3) requires a defendant to file a motion in district court to set up an installment plan. See *Logan*, 2021 WL 645929, at *4 ("[Defendant's] remedy for the district court's alleged error in not providing a payment plan for its order of restitution lies solely with the district court by making a timely motion under K.S.A. 2020 Supp. 21-6604[b][3]."); *Barrett*, 2021 WL 4352530, at *5 ("Given that K.S.A. 2020 Supp. 21-6604[b][3] stipulates that a defendant seek relief in the district court, not an appellate court, [defendant's] remedy lies there."). Palmer had until December 31, 2020, to ask this court to stay his appeal so he could pursue relief in the district court. Compare *Logan*, 2021 WL 645929, at *4-5 (upon defendant asking appellate court to stay its ruling on his appeal to permit him to file a motion under K.S.A. 2020 Supp. 21-6604[b][3] before December 31, 2020 deadline, appellate court stayed appeal and remanded to district court, while maintaining jurisdiction, so defendant could timely file a motion with district court), with *Jackson*, 2021 WL 4693244, at *18 (finding K.S.A. 2020 Supp 21-6604[b][3] did not provide avenue of relief for defendant who did not ask appellate court for stay of her appeal before December 31, 2020 deadline), and *Barrett,* 2021 WL 4352530, at *5 (same).

Palmer did not seek a stay of this appeal so he could pursue a motion in the district court to establish a payment plan. Since Palmer did not comply with the procedures set forth in K.S.A. 2020 Supp. 21-6604(b)(3), we cannot grant the relief he seeks.

*Workability of Restitution*

Palmer also argues the district court abused its discretion in finding the amount of restitution payable to Midwest to be workable. In response, the State argues the district court did not abuse its discretion because Palmer did not present compelling evidence to the court demonstrating unworkability.

First, Palmer misunderstands the standard of review for this issue. He claims the district court abused its discretion because substantial competent evidence did not support the district court's conclusion that paying $101,112.47 in restitution was workable, citing *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). But *Shank* does not instruct appellate courts to use a substantial competent evidence standard when reviewing whether a restitution order is workable. Rather, *Shank* explains that an abuse of discretion standard applies to the workability of a restitution amount while a substantial competent evidence standard applies when appellate courts review "'[a] district court's factual findings relating to the causal link between the crime committed and the victim's loss'":

> "An appellate court's consideration of a restitution plan can involve three standards of review:
>
>> 'Questions concerning the "amount of restitution and the manner in which it is made to the aggrieved party" are reviewed under an abuse of discretion standard. A district court's *factual findings relating to the causal link between the crime committed and the victim's loss* will be affirmed if those findings are supported by *substantial competent evidence*.' . . .

10

"Shank argues the restitution order is unworkable because he cannot pay the restitution as ordered. Accordingly, abuse of discretion is the proper standard. [Citations omitted.]" (Emphases added.) *Shank*, 304 Kan. at 93.

Thus, we review Palmer's challenge to the workability of his restitution amount for an abuse of discretion. A district court abuses its discretion if no reasonable person would agree with the decision or if the decision stems from an error of law or fact. *State v. Meeks*, 307 Kan. 813, 816, 415 P.3d 400 (2018).

The restitution statute at issue, K.S.A. 2018 Supp. 21-6604(b)(1), provides:

"In addition to or in lieu of any of the above, the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable. . . . If the court finds a plan of restitution unworkable, the court shall state on the record in detail the reasons therefor." K.S.A 2018 Supp. 21-6604(b)(1).

The Kansas Supreme Court has observed "restitution is the rule, and unworkability is the exception." *State v. Tucker*, 311 Kan. 565, 566, 465 P.3d 173 (2020) (citing *Meeks*, 307 Kan. at 816-17). The defendant has the burden to come forward with evidence of "compelling circumstances" that render the restitution plan unworkable. *Shank*, 304 Kan. at 94. Specifically, the defendant must present evidence of his or her inability to pay the restitution to meet the burden of establishing unworkability. *Tucker*, 311 Kan. at 567.

The restitution statute does not define "unworkable," and the Kansas Supreme Court has specified courts should evaluate unworkability case by case. See K.S.A. 2018 Supp. 21-6604(b)(1); *Tucker*, 311 Kan. at 566-67; *Meeks*, 307 Kan. at 819-20. In *Meeks*, the Kansas Supreme Court recounted the holdings in several cases from this court and commented: "We are wary of the rigid definition of 'unworkable' that may be taking

shape as a result of the numerous Court of Appeals decisions." 307 Kan. at 819. The *Meeks* court stated: "Given the rigidity evolving from the Court of Appeals decisions, we think it is appropriate to reiterate that unworkability should be evaluated on a case-by-case basis." 307 Kan. at 820. The court followed this statement by explaining in more detail what a case-by-case evaluation looks like in this context:

"[A] defendant who argues that restitution is unworkable must come forward with evidence of his or her inability to pay. District courts should use this flexible guideline to evaluate each defendant's unique circumstances before deciding whether the defendant has shown a plan would be unworkable. Some of the factors relevant to the court's inquiry will be the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents. In some circumstances, the amount of time it will take a defendant to pay off a restitution order will also be relevant, especially if the defendant is subject to probation until the restitution is paid in full. In all circumstances, the district court should keep in mind the ultimate goals of restitution: compensation to the victim and deterrence and rehabilitation of the guilty. [Citations omitted.]" *Meeks*, 307 Kan. at 820.

Palmer claims the district court abused its discretion because no reasonable person would agree that requiring him to pay $101,112.47 in restitution was workable based on the evidence of his inability to pay. He relies on *State v. Herron*, 50 Kan. App. 2d 1058, Syl. ¶¶ 1-2, 335 P.3d 1211 (2014), to assert that "[o]ne compelling circumstance courts consider when determining the workability of a restitution plan is the defendant's ability to pay" and that "[p]overty alone can constitute a sufficient legal basis for a court's determination that no restitution-repayment plan would be viable." He then asserts that his attorney in district court argued as to his inability to pay restitution by pointing out that he only had a high school diploma and had only been earning $10 per hour.

In *Herron*, the district court ordered the defendant to pay $6,864.10 in restitution despite the defendant making $680 each month and after paying for her car payment, health insurance, rent, and food, only having $32 left each week for items such as soap,

medicine, and socks. A panel of this court held the district court abused its discretion in finding that the restitution it ordered would be workable because "no reasonable person would agree that requiring Herron to pay either $6,864.10 in 18 months [the length of her probation] or $10 a month for the next 57 years is workable." 50 Kan. App. 2d at 1065-66. But *Herron* is distinguishable. In *Herron*, the defendant was placed on probation, while Palmer was sentenced to prison and postrelease supervision. See *State v. Georage*, No. 117,595, 2018 WL 4264860, at *4 (Kan. App. 2018) (unpublished opinion) (distinguishing *Herron* on this basis); *State v. Steffens*, No. 113,175, 2016 WL 1719666, at *3 (Kan. App. 2016) (unpublished opinion) (distinguishing *Herron* on this basis).

*Meeks* came after *Herron* and in *Meeks*, the Kansas Supreme Court both clarified that unworkability should be evaluated case by case and disapproved of this court analyzing unworkability by comparing the restitution order at hand to orders found unworkable in other cases. See *Meeks*, 307 Kan. at 820-21. Following *Meeks*, a panel of this court addressed an argument based on *Herron*. See *State v. Henry*, 57 Kan. App. 2d 846, 857-58, 461 P.3d 849 (2020). But rather than engaging in a comparison to *Herron*, the panel in *Henry* followed the guidance set forth in *Meeks* and evaluated the case based on the specific facts at hand. *Henry*, 57 Kan. App. 2d at 858-59 ("Rather than looking to other cases, we will look to the precise facts at hand, as the Supreme Court indicated in *Meeks*.").

In cases such as Palmer's, where restitution was not due until the defendant's release from prison, the Kansas Supreme Court requires the defendant to provide evidence of his inability to pay restitution after release to establish his restitution order is unworkable. See *Meeks*, 307 Kan. at 821; *State v. Holt*, 305 Kan. 839, 843-44, 390 P.3d 1 (2017); *Shank*, 304 Kan. at 95-96; *Alcala*, 301 Kan. at 840. Palmer simply argued he would be unable to pay the restitution because he only had a high school diploma and had worked laborer jobs that only paid $10 an hour. He presented no evidence establishing he would be unable to pay restitution after his release from prison. Instead, like the

defendant in *Meeks*, Palmer presented evidence to the contrary. In *Meeks*, the court noted the defendant presented evidence that he could work despite his back injuries and, based partly on this fact, found it could not conclude that no reasonable person would have taken the district court's view. See *Meeks*, 307 Kan. at 821-22. And here, while Palmer's attorney said the restitution was unworkable at sentencing, she also noted Palmer planned to further his education and acknowledged his future earning capacity and financial obligations upon release were unknown. Since Palmer failed to present compelling evidence of his inability to pay restitution upon his release, we cannot find that no reasonable person would agree with the district court's determination that the restitution would not be unworkable. As a result, we find the district court did not abuse its discretion.

*Constitutionality of Kansas' Restitution Scheme*

Finally, Palmer argues Kansas' restitution scheme violates his right to a jury trial under both section 5 of the Kansas Constitution Bill of Rights and the Sixth Amendment to the United States Constitution. He did not raise these issues before the district court and acknowledges the general rule that a defendant cannot raise an issue for the first time on appeal. See *State v. Robison*, 314 Kan. __, 496 P.3d 892, 895 (2021) (noting constitutional issue not raised before district court generally considered abandoned); *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014) (providing issues not raised before district court cannot be raised on appeal). Still, Palmer asserts his claim falls within these exceptions to the general rule: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case and (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights. See *Robison*, 496 P.3d at 895-96. An appellate court's decision to review an unpreserved claim under either of these exceptions is a prudential decision, and even when an exception is satisfied, appellate courts need not review the newly asserted claim. See 496 P.3d at 896.

We decline to exercise our discretion to address Palmer's constitutional arguments for the first time on appeal. We also note the Kansas Supreme Court recently addressed each of the arguments Palmer presents in both *Robison* and *Arnett*, and ultimately held that (1) criminal restitution does not violate section 5 of the Kansas Constitution Bill of Rights (after finding that certain portions of the criminal restitution statutes—those giving restitution orders the effect of a civil judgment—did violate section 5, and severing those portions) and (2) Kansas' criminal restitution statutes do not violate a defendant's right to a jury trial under the Sixth Amendment to the United States Constitution. *State v. Arnett*, 314 Kan. __, 496 P.3d 928, 932-33, 937-38 (2021); *Robison*, 496 P.3d at 896-97, 900-02.

Affirmed.